292 So.2d 112

**ASSOCIATES FINANCIAL SERVICES CO., INC.**

v.

**The FIRST NATIONAL BANK OF MOBILE et al.**

**SC 378.**

Supreme Court of Alabama.

March 7, 1974.

Rehearing Denied April 11, 1974.

Mylan R. Engel, Mobile, for appellant.

Edward P. Turner, Jr., Chatom, Jerry A. McDowell and Edmund R. Cannon, Mobile, for appellees.

JONES, Justice.

This is an appeal by defendant, Associates Financial Services Company, Inc., from a judgment for plaintiff, The First National Bank of Mobile, as Executor of the Estate of E. L. Jordan, deceased, in action based on § 108, Title 7, Code of Alabama 1940 (legal fraud).

Two substantive issues are here presented:

1. Whether the trial court erred in not requiring plaintiff to plead by way of replication facts invoking the "saving" clause of § 42, Title 7 (one year after discovery), where in the absence of such pleading, these issues were nevertheless fully framed, tried, and embraced in the court's charge.

2. Whether the trial court erred in refusing defendant's request for the general affirmative charge as to the sufficiency of the evidence.

We answer both questions in the negative and affirm.

The factual context in which these dispositive issues arose can be summarized:

R. E. Massey, D. B. A. Chatom Motors, operated a General Motors dealership under a floor plan whereby Associates advanced money to Massey to pay General Motors for automobiles. These cars were security for the loan. As cars were sold, Massey was to pay Associates from proceeds of the sale, and for protection, Associates sent its branch manager (Eddings) monthly to assure that cars not paid for were physically present on Chatom's lot. If not, and if they had not been paid for, the cars were "sold out of trust" (s. o. t.).

Chatom Motors was in an s. o. t. condition as of November, 1968, through June, 1969. Eddings falsified reports to his em-

K

ployer and did not reveal the s. o. t. condition until August 1, 1969, when he filed his July report. On June 20, 1969, with Chatom Motors $285,000 in debt to Associates, Jordan—original plaintiff—was induced to co-sign a continuing guaranty with Massey in favor of Associates. Jordan was not informed of the s. o. t. condition by anyone; that is, Jordan's signature was obtained without his being informed by either the debtor or creditor that security for the existing indebtedness was no longer in the debtor's possession.

August 8, 1969, Massey, his wife, and Jordan executed a deed of trust and promissory note collateralizing the continuing guaranty with the further concealment from Jordan of the s. o. t. status of the security. Jordan paid the indebtedness upon demand in May, 1970. The instant suit was filed July 6, 1970, claiming $500,000 damages, alleging that on June 20, 1969, Associates induced Jordan to execute the continuing guaranty by fraud through concealment, suppression of the truth, or failure to disclose material facts relied upon by Jordan in the June 20, 1969, transaction.

The first of the two issues, as hereinabove posed, presupposes the correctness of appellant's contention, i. e., where the defense pleads specially the statute of limitations to a claim of fraud under the system of pleading then prevailing, the proper method for plaintiff to interpose the "saving" clause [1] is by way of replication. Williams v. Bedenbaugh, 215 Ala. 200, 110 So. 286 (1926); see also Johnson v. Shenandoah Life Insurance Company, 291 Ala. 389, 281 So.2d 636 (1973).

The argument that such failure constitutes error to reverse, however, overlooks the equally well-established rule so aptly stated by Mr. Justice Coleman, speaking for the Court, in Western Railway of Alabama v. Brown, 280 Ala. 543, 196 So.2d 392 (1967):

"The rule is that if there is some defect of averment in the complaint and the court has erred in holding such pleading good, nevertheless, if there is evidence of the matter so omitted and both parties try the issue as though such allegation were made, and the court instructs the jury that such matters must be proven, and both parties have full opportunity to offer and do offer all the evidence they wish on that issue, we will not reverse the judgment for the error in such ruling on the pleading. Turner v. Blanton, 277 Ala. 536, 540, 173 So.2d 80, and authorities there cited."

The record discloses evidence reasonably affording an inference as to whether plaintiff was defrauded, and whether plaintiff could have reasonably discovered the fraud within the 15-day period (between June 20, 1969—the date of the fraud—and July 6, 1969—one year prior to the filing of the complaint); thus, it was within the province of the jury to resolve the conflicts in the evidence and to determine whether, on all of the evidence, the statute of limitations created a bar to the suit. Letson v. Mutual Loan Society, 208 Ala. 285, 94 So. 288 (1922); see also Birmingham Bond & Mortgage Company v. Lovell, 81 F.2d 590 (Fifth Circuit, 1936).

We have treated the foregoing issue somewhat summarily due to the now extinction of the system of common law pleading under which it arose.

We feel constrained, however, to comment on the prospective application of the Alabama Rules of Civil Procedure to the facts at hand. Rule 9(b) requires:

"In all averments of fraud or mistake, the circumstances constituting fraud or

[1]. § 42, Title 7 provides: "In actions seeking relief on the ground of fraud where the statute has created a bar, the cause of action must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his suit."

mistake shall be stated with particularity."

Rule 8(c) requires that the statute of limitations be affirmatively set forth. Since the rules do not contemplate formal responses to affirmative defenses, we are of the conclusion that a plaintiff in a fraud action seeking to invoke the "saving" clause (permitting the filing of a suit within one year after the discovery) in order to withstand a motion to dismiss, should show the time and the circumstances of the discovery of the alleged fraud. This observation is not to be construed as in any manner obviating the operative effect of Rule 15(b) relating to amending the pleadings to conform to the evidence.

■■ The second substantive issue set out above raises the preliminary issue of whether Associates, the guarantee, owed a duty to disclose to Jordan, the guarantor, the non-existence of the cars which formed the security for the debtor's (Chatom Motors) indebtedness. We answer in the affirmative and hold that where a guarantor is induced to enter into a contract of guaranty, covering present and future indebtedness, by a fraudulent representation or concealment by the guarantee as to some material fact affecting the liability or potential obligation of the guarantor, such misrepresentation or concealment operates to make the guaranty voidable since the guarantor is entitled to full disclosure of every point which is likely to bear upon his disposition to become such. See Carroll v. Hanahan, 221 Ala. 553, 130 So. 197 (1930); Anderson v. Bellenger & Rails, 87 Ala. 334, 6 So. 82 (1888); 28 C.J., Guaranty, § 65, pp. 925–26; and 38 C.J.S. Guaranty § 32, p. 1171.

In Magee v. Manhattan Life Ins. Co., 92 U.S. 93, 23 L.Ed. 699 (1875), a case involving a New York creditor and Alabama sureties, it was stated:

"A surety is 'a favored debtor.' His rights are zealously guarded both at law and in equity. The slightest fraud on the part of the creditor, touching the contract, annuls it . . .

"But there is a duty incumbent on him. He must not rest supine, close his eyes, and fail to seek important information within his reach. If he does this, and a loss occurs, he cannot, *in the absence of fraud on the part of the creditor,* set up as a defense, facts then first learned which he ought to have known and considered before entering into the contract." (Emphasis supplied.)

While *Magee* places a duty of inquiry on the surety absent fraud on the part of the creditor, it also clearly *discharges* the surety in the event of even "slight fraud" of the creditor.

In setting out principles relating to fraud and concealment, *Magee* sets forth the following:

"A fraudulent concealment is the suppression of something which the party is bound to disclose . . .

"To constitute fraud, the intent to deceive must clearly appear . . .

"The concealment must be willful and intentional . . .

"The test is, whether one of the parties knowingly suffered the other to deal under a delusion . . ."

In 72 C.J.S. Principal and Surety § 77— Concealment, b. Duty to Disclose, at p. 560, it is stated:

"Where the obligee knows, or has good grounds for believing, that the surety is being deceived or misled, or that he is being induced to enter into the contract in ignorance of facts materially increasing the risks, of which the obligee has knowledge, and he has a reasonable opportunity, before accepting his undertaking, to inform him of such facts, good faith and fair dealing demand that he should make such disclosure to the surety, as where material facts exist, and are known to the obligee, of a character

which the surety may reasonably assume do not exist."

A question presented in the present case is whether or not the fact that the creditor was not physically present at the execution of the agreement by the surety frees the creditor from the good faith duty of disclosing the dissipation of the security which ordinarily, and, according to the creditor's records, backed the indebtedness.

■ While it is a general proposition that if the creditor is not present when the surety's signature is procured the creditor is not required to seek out the surety and warn him, the circumstances of the present case preclude the application of this "escape clause."

In White's Adm'r. v. Life Association of America, 63 Ala. 419, 426 (1879), C. J. Brickell, speaking for the Court stated:

"The principles defining, in particular circumstances, the good faith which the creditor must observe towards the surety, aid materially in determining what are his duties under other circumstances, in which he may have the means of obtaining payment from the principal. 'Good faith' is not a mere absolute, inflexible phrase, existing of and by itself. It is a relative term, and must always be considered in reference to the relation of the parties—the confidence existing, or which may be just reposed, and the circumstances surrounding them, when it may or may not require the one party or the other to act, or a want of it may be deduced from inaction."

A restatement of the salient facts in light of the foregoing principles would be helpful.

The debtor, an auto dealership, financed his cars under a common floor plan financing arrangement, with the indebtedness secured by the cars. As the cars sold, the debtor became obligated to pay the creditor. The creditor physically checked monthly to determine if cars not paid for were still physically present at debtor's dealership.

For over six months the creditor falsified these reports, i. e., indicated that the cars were present when in fact they were missing, after which the debtor was nearly $300,000 in debt with no security backing this obligation.

Being greatly concerned about this deteriorating situation, the creditor demanded that the debtor secure a guarantor and agreed to the guarantor proposed by the debtor. Next, the creditor prepared the agreement and typed in the surety's name; then the debtor left to procure the surety's signature on the instrument.

Under such circumstances, the creditor (who for over six months had not only known of the dissipation of the security which ordinarily backs the indebtedness in floor plan financing arrangement, but had additionally falsified the only report which purported to show the status of the security) *cannot* subsequently demand that the debtor obtain a surety, agree to the debtor's selection, prepare the instrument and then send the debtor after the surety's signature, while remaining behind in the sanctuary of his office, and thereby invoke the loophole which excuses the creditor's disclosure due to the lack of a face to face confrontation with the surety.

We hasten to state that the foregoing review of the applicable principles and the facts here pertinent should not be construed as a holding that the duty to disclose exists as a matter of law, but rather that a jury question was presented by the tendencies of the evidence and that the general affirmative charge based on this ground was properly refused.

■ Additionally, a guarantor is entitled to recover payments made as the result of a mistaken belief that a material fact exists, where such belief was induced by the guarantee, creditor, who had full knowledge of the actual facts. See Schram v. Dederick, 42 F.Supp. 525 (D.C., Mich.,

1941); and In re Realty Associates Securities Corporation, 66 F.Supp. 416 (D.C.N.Y., 1946), cert. denied, 332 U.S. 836, 68 S. Ct. 218, 92 L.Ed. 409.

The June 20, 1969, guaranty covered existing indebtedness as well as future indebtedness between Chatom Motors, debtor, and Associates, guarantee. As argued by Associates, Jordan was familiar with the floor plan arrangement between Associates and Chatom Motors. Accordingly, Jordan entered into the June 20 agreement with Associates with the understanding that the then existing indebtedness of Chatom Motors to Associates was secured by the cars. Therefore, the extent of Jordan's potential obligation was supposedly substantially less than the actual indebtedness then existing; that is, rather than assuming a potential obligation of more than a quarter of a million dollars, Jordan had every right to believe that he was assuming a relatively small obligation. Associates, through its agent, Eddings, falsified the reports that were designed to confirm the presence of the security. Eddings testified that he never informed Jordan of the absence of the security, which circumstance substantially increased Jordan's potential liability. Associates, other than their employee Eddings, did not become aware of the s. o. t. condition until August 1, 1969, at which time Eddings filed an accurate report on the security. However, Associates did not inform Jordan of this condition at any time subsequent to its discovery.

■ The evidence tended to establish that at a time well within 12 months of the filing of the present suit on July 6, 1970, Jordan had no knowledge of, and had not discovered, the fraudulent concealment. In our view, then, Associates was not entitled to the general affirmative charge as to either the issue of fraud or the discovery of the fraud within 12 months preceding the filing of the suit. Particularly, we are not persuaded that reasonable men must draw the same conclusion from the facts on either issue. Consequently, it was for the jury. Lawson v. General Telephone Company of Alabama, 289 Ala. 283, 267 So.2d 132 (1972).

■ The remaining alleged error, properly assigned, dispositive of this appeal, complains of the action of the trial court in sustaining demurrers to Associates' Plea 55, which sought to invoke the principles of estoppel and ratification based on the guarantor's execution of the note and mortgage on August 8, 1969, pursuant to the continuing guaranty. Without deciding the legal sufficiency of this plea, we note that the record clearly discloses that Associates adduced under the plea of the general issue full and complete evidence of the August 8 transaction, and the trial court at defendant's request gave the following charge:

"[I]f a party does acts indicating an intent to affirm the contract after discovery of the fraud, then he will be precluded from asserting a cause of action for the concealment or misrepresentation."

Under the harmless error rule (Supreme Court Rule 45), the trial court will not be reversed for sustaining demurrers to pleas alleging facts which were gone into under the general issue, and particularly is this true where the trial court adequately and fully instructs the jury on the applicable principles of law. Hartford Accident & Indemnity Company v. Cosby, 277 Ala. 596, 173 So.2d 585 (1965).

Hence, the judgment of the lower court is affirmed.

Affirmed.

MERRILL, HARWOOD, BLOODWORTH and FAULKNER, JJ., concur.

COLEMAN, J., dissents.

HEFLIN, C. J., and MADDOX and McCALL, JJ., not sitting.