345 So.2d 1331 (1977)
Dorothy H. CARON and Central Insurance Agency of Mobile, Inc.
v.
Ruth K. TEAGLE and Charles D. Teagle.
SC 2115.
Supreme Court of Alabama.
April 29, 1977.
Daniel G. Sayers, Marr & Friedlander, Mobile, for appellants.
Charles C. Partin, III, Bay Minette, for appellees.
JONES, Justice.
This case involves a dispute over title to property. Ruth and Charles Teagle, plaintiffs below, contracted to purchase from Central Insurance Agency and Dorothy Caron four lots which we will refer to as lots 11, 13, 16, and 18. Deeds to these lots were conveyed pursuant to separate agreements. *1332 There was one deed per lot, each of which recites a sales price of $14,200 and acknowledges receipt of $1400 as paid, leaving a balance of $12,800. The balance of the purchase price on all four lots was to be paid in monthly installments of $723.84. The Teagles made all of these payments, commencing in September of 1973 and continuing through January, 1975. In addition to the down payment, the total amount expended by the Teagles was $12,305.26, including interest.
At trial, the Teagles testified that during August of 1973, September, November, and December of 1974, and January and February of 1975, oral agreements were entered into by the Teagles and Caron. The effect of these agreements was that either the Carons (Dorothy and husband, Frank) would refund all of the principal and interest to the Teagles or the Carons would allow the Teagles to apply the money paid to one lot of the Teagles' choice. Caron denies that any meetings occurred except the meeting of February, 1975, at which the Teagles executed and delivered deeds conveying each of the four lots back to the original grantors.
The Teagles further testified that during the November, 1974, meeting, Frank Caron told them that they could apply all the money paid to date on one lot of their choice and the Teagles chose lot 11. In February, according to the Teagles, Frank Caron told them to meet him and bring their vendor's lien deeds. Caron was to bring a deed to lot 11. At this meeting, Caron told the Teagles that it was necessary for them to give him their deeds and convey to him their equity in the four lots before he could release the lien on lot 11.
The Teagles testified that, notwithstanding their full compliance with this oral agreement reached between the parties, Caron refused to vest them with a fee simple title in lot 11.
Caron, as previously stated, denies that any such agreement existed. He testified that the only option offered the Teagles was the "payment of interest only during a certain period of time." This, according to Caron, the Teagles refused and, instead, returned the lots. Furthermore, Caron testified that he only allowed the Teagles to return the lots so that he would not have to institute foreclosure proceedings against the Teagles.
This declaratory judgment action was tried ore tenus before the trial Judge. In their complaint, the Teagles asked the trial Judge to (1) declare the deed, transferring their interest to Caron, void because it was not acknowledged before an officer authorized to take acknowledgments; or, in the alternative, declare it void for lack of consideration, and (2) declare that the Teagles are possessed of an equity in lot 11 and are entitled to receive a deed upon payment of the balance due under the contract of purchase. Finally, the Teagles had a request for general equitable relief.
Caron's answer denied that any oral agreement had been made, and, alternatively, that any oral agreement would be void because of the Statute of Frauds.
Upon completion of the trial, the Teagles were allowed to amend their complaint to include an action for fraud. The Carons duly objected. The trial Judge ordered the Carons and Central Insurance Agency to convey title in lot 11 to the Teagles upon the payment of $1,367.33the balance due on lot 11 if the Teagles applied the money previously paid on the four lots.[1] The trial Judge further ordered the Teagles to convey their equitable interests in the rest of the lots back to the Carons and Central Insurance. In essence, the trial Judge ordered that the February, 1976, agreement be specifically performed.
The issue is twofold: (1) Whether the trial Judge was correct in allowing the Teagles to amend their complaint at the close of the evidence, and (2) if not, are there any other grounds supported by the evidence *1333 which would allow us to affirm the trial Judge?[2] We answer "No" to both questions.

I.
Rule 9(b), ARCP, states the rule for pleading fraud as follows:
"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be plead with particularity."
An examination of the Committee Comments to Rule 9(b) reveals that the purpose of this rule is to give fair notice to the opposing party. There seems to be little doubt that the Teagles' original complaint, prior to amendment, did not satisfy this notice requirement. Counsel for the Teagles contend that the trial Judge was empowered to permit the amendment pursuant to Rule 15(b), ARCP. Under this rule, if the party opposing the amendment objects, but fails to persuade the court that he will be prejudiced in maintaining his claim or defense, the Court must then grant leave to amend the pleadings to conform to the evidence. See 6 Wright & Miller, Federal Practice & Procedure, Civil, § 1495 (1973).[3]
It is obvious that the Carons failed to persuade the trial Judge that prejudice would result from the amendment. We think, however, that, under the circumstances of this case, prejudice necessarily resulted. The two rules must be considered together. The purpose of Rule 9(b) is to provide adequate notice to the opposing party of any claim for fraud so that he may properly prepare his case, and 15(b) recites that an amendment may be allowed over the objection of the opposing party only when the trial judge is satisfied that no prejudice results.
Thus, when these rules are read togetherin harmonyand applied to the facts of this case, it becomes apparent that the defendants were indeed prejudiced. The Teagles' complaintto which an answer was filed and on which issue was joinedcontains no reference to an allegation for fraud. To allow the Teagles to amend their complaint under Rule 15(b) to include a claim for fraud at the close of the evidence would subvert the purpose and intent of Rule 9(b).
This is not to say that, under all circumstances, Rule 15(b) precludes the addition by amendment of theories or claims not covered by the original pleadings, nor pleadings at the time of trial (including pre-trial orders). Indeed, we are not to be understood as holding that, under appropriate circumstances, a claim for fraud could not be added by amendment even after trial under Rule 15(b). Certainly, by the very terms of the rule, where the issue of fraud "[has been] tried by express or implied consent of the parties"and thus no prejudice resultsit would not be error to allow the moving party to amend his claim to conform to the evidence pursuant to 15(b). See, e. g., Associate Financial Service Co., Inc. v. First National Bank of Mobile, 292 Ala. 237, 292 So.2d 112 (1974).
But where, as here, the defendants had no notice by way of pleadings, either before or during trial, of any claim of fraud, and the record affirmatively shows that the defendants did not consent, expressly or impliedly, to a trial of this issue, we are constrained to hold that the trial Court erred in allowing the amendment. It necessarily follows, then, that the trial Court's decree cannot be sustained under this aspect, or theory, of the case.

II.
Thus, we are faced with a second issue: Whether there is any competent evidence *1334 which would support another theory for recovery. The only other theory advanced by the Teagles, and the only one we can find, is that this was an oral agreement without the Statute of Frauds. With this, we cannot agree. We can find no evidence in the record to support the findings that the Teagles have satisfied Tit. 20, § 3, Code. This statute requires:
"In the following cases, every agreement is void, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party to be charged therewith, or some other person by him thereunto lawfully authorized in writing:
"* * *
"(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof be paid, and the purchaser be put in possession of the land by the seller."
The exception to this rule is if (1) payment of the purchase price has been made after the alleged oral agreement, and (2) actual possession by the purchaser. See Reynolds v. Bryant, 281 Ala. 372, 202 So.2d 734 (1967); Quinlivan v. Quinlivan, 269 Ala. 642, 114 So.2d 838 (1959).
There is no evidence which shows that the Teagles made any payments after the alleged oral agreement of February 22, 1975, or that they were in actual possession of lot 11.
Counsel for the Teagles seeks to avoid the operative effect of the Statute of Frauds by asserting that this was not in fact an agreement for the sale of interest in land; that the sale had occurred in the original transaction as evidenced by the four deeds; and that this subsequent agreement was, in reality, a modification of the earlier contract whereby the Teagles, for the payment of the balance due on a single lot, were to retain title to lot 11 and reconvey title to the remaining three lots. In other words, the Teagles contend that the February, 1975, oral agreement is not voided by the Statute of Frauds because it was in substance, though not in form, a contract for recission and not a contract for sale of land.
Although this argument is ingenious and in the highest tradition of our adversary system, we are constrained to reject it. The Teagles' own version of the transaction is to the effect that they conveyed all four lots back to the original grantors with the understanding that, upon payment of the balance of the full purchase price for one lot, the Carons and Central Insurance Agency would reconvey to them lot 11. While the total effect was to cancel or rescind portions of the earlier transaction, its accomplishment was by way of conveyance of title to real property, and this is the essence of the subject matter embraced in the Statute of Frauds. To be sure, the evidence of the "swearing match" manifested in the record of these proceedings is the policy reason on which the Statute of Frauds is grounded. Kyle v. Jordan, 196 Ala. 509, 71 So. 417 (1916).
Because we find that the order permitting the amendment to include fraud constituted error, and because we can find no evidence to support the trial Judge's decree on any other reasonable aspect of the claim, the case is reversed and remanded.
REVERSED AND REMANDED.
TORBERT, C. J., and BLOODWORTH, ALMON and EMBRY, JJ., concur.
NOTES
[1] Although this fact is garnered from the trial Court's decree, the record is unclear as to how the court arrived at this figure. At any rate, the parties do not appear to disagree on this point.
[2] Counsel for appellees forthrightly acknowledge that there were only two theories available to the trial Court under the evidence upon which the final decree can be sustained:

(1) Fraud, which is dependent upon the propriety of the trial Court order allowing the injection of the claim by amendment following the close of the evidence.
(2) Breach of the agreement to convey lot 11, which is dependent upon the operation vel non of the Statute of Frauds.
[3] Because this case is being remanded for a new trial, we deem it inappropriate to discuss in detail the evidentiary basis for the claim of fraud.