This is an appeal from rulings entered by the trial court adversely to the plaintiff, Charles Amason, on motions for summary judgment. We affirm in part, reverse in part and remand.
The case stems from a series of loan transactions between Amason and defendant, First State Bank of Lineville, Alabama [hereinafter the Bank]. The first three of these loans were transacted in 1972 and 1973:
 1. August 8, 1972 — Plaintiff Amason borrows $3,900 and gives the Bank a secured note.
 2. September 11, 1972 — Plaintiff Amason borrows $1,400 and gives the Bank a secured note.
 3. February 6, 1973 — Amason borrows $8,000 and gives the Bank a secured note.
Payments on each of these three debts were delinquent on September 26, 1974. On that date, and thereafter the following events occurred:
 4. September 26, 1974 — Amason pays the Bank $10,500 and gives a new note for the balance. The notes of August 8, 1972 and September 11, 1972 were thereupon cancelled. The note of February 6, 1973 was "renewed."
 5. October 3, 1974 — Amason borrows $2,200 and gives the Bank a secured note.
 6. April 2, 1975 — The debts of September 26, 1974, and October 3, 1974 are "combined" into a new note.
On November 20, 1975, George T. DeVore, the newly appointed President of the Bank, wrote Amason that he was expecting full payment of the April 2, 1975 note when it fell due on December 3, 1975. Thereafter both parties consulted counsel. On January 15, 1976 Amason paid the Bank $5,440.00 and executed a new note for the balance of his indebtedness to the Bank. This note was paid in full by Amason on November 16, 1976. *Page 549 
On January 14, 1977 this action commenced against the Bank and its president, George T. DeVore. Amason, as the nominal representative of a class of bank debtors, and as an individual, alleged violations of the "Minicode," Tit. 5, § 316, et seq., Code of Ala. (1973 Supp.) (presently Code of 1975, § 5-19-19, et seq.), and fraud. Among other defenses the defendant's answer set up that of the statute of limitations.
On April 14, 1977 the lower court entered an order ruling that a class action could not be maintained and granting defendant's motion for summary judgment as to that aspect of the complaint. Subsequently Amason amended his complaint to delete the class action paragraphs and to add additional defendants to his individual action, Integon Life Insurance Corporation, and Irby Seawell Company. In a further amendment, Amason alleged fraud by those parties and the Bank in the overcharge of credit life and non-recording insurance. Motions for summary judgment were filed by all the defendants, and by Amason as well on a limited number of issues. After briefs were submitted and oral arguments heard on April 5, 1978 the court entered summary judgment in favor of Amason on that aspect of his complaint alleging an excessive finance charge on the January 15, 1976 note, but in favor of the defendants on all other grounds of the complaint as amended. Amason's motion to set aside or vacate the judgment was overruled on June 1, 1978. Notice of appeal was timely filed thereafter.
Plaintiff/appellant Amason contends that the lower court erred in granting summary judgment on April 14, 1977 for the defendants/appellees on the class action aspects of the complaint. That order stated "[t]he court is of the opinion that the prerequisites to a class action as provided in Rule 23 (a) do not exist, and that the facts in this case do not support an order that a class action be maintained."
Rule 23 (a), ARCP inherently mandates that the person bringing the action must be a member of the class he seeks to represent. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549,7 L.Ed.2d 512 (1962); Huff v. N.D. Cass Co. of Alabama,468 F.2d 172 (5th Cir. 1972); 7 Wright Miller, Federal Practice andProcedure: Civil § 1761 (1972). Amason's complaint states that:
 Plaintiff brings this action on behalf of himself and all members of a class composed of persons entering into consumer loan transactions with Defendant [Bank] . . . since July 20, 1972, . . . and whose indebtedness to the Defendant [Bank], as a result of said transactions is still owing, . . . .
(emphasis added)
However, it appears from the affidavit of defendant, George T. DeVore, that Amason had no indebtedness still owing to the Bank at the time the action commenced, and in fact had not been indebted to the Bank since November 16, 1976. These facts were not controverted by Amason in his affidavit. Therefore, because it was established from the affidavits introduced on the defendants' motion that Amason was not a member of the class which he sought to represent, we hold that the court did not err when it ruled that the class action could not be maintained. Amason contends, however, that this ruling was premature because there was no opportunity for an evidentiary hearing or discovery on the class action issue. Rule 23 (c)(1), ARCP requires that:
 As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.
See Bagley v. City of Mobile, 352 So.2d 1115 (Ala. 1977). We hold that Rule 23 (c)(1), ARCP was complied with in this case when the court entered its order of April 14, 1977. Further, no cases cited to us by the plaintiff mandate a postponement of the determination by the court for further discovery and an evidentiary hearing when the uncontroverted facts show affirmatively that the plaintiff does not share the identity of interest required by Rule 23 (a), ARCP. *Page 550 
Amason next contends the court erred in its April 5, 1978 grant of summary judgment for the defendants by holding that the statute of limitations (Code of 1975, § 5-19-19 (Minicode)) barred all of Amason's claims except those stemming from the note of January 15, 1976.
Amason's arguments are essentially two-pronged. On the one hand he argues that the note of August 8, 1972 as well as the note of January 15, 1976 fell within the statute of limitations found within the "Minicode," Code of 1975, § 5-19-19. On the other hand Amason contends that even if the August 8, 1972 note falls outside the above time limit, it and all the other transactions complained of, are resurrected by virtue of Code
of 1975, § 6-2-3. We will discuss these arguments seriatim.
Code of 1975, § 5-19-19 provides inter alia that "[N]o action . . . may be brought more than one year after due date of the last scheduled payment of the agreement pursuant to which the [excess] charge was made . . ." In this instance the only transaction unquestionably within the statute's terms is that of January 15, 1976. Amason's contention that the note of August 8, 1972 falls within the statute's limits is bottomed on the fact that the note was originally scheduled to run for 60 months. However, it appears without question that the note of August 8, 1972 was cancelled by agreement of the parties on September 26, 1974 and thus ran only 26 months. Thus the statute of limitations of Code of 1975, § 5-19-19 began to run from the date of the last scheduled payment of the agreement immediately prior to the time in which the agreement ceased to legally exist. In this case the action was brought on January 14, 1977, more than one year from the time of the last scheduled payment under the cancelled instrument and as such is barred by Code of 1975, § 5-19-19.
Amason's second contention would have us resurrect both the agreement of August 8, 1972 and the other transactions as well under the statutory fraud provisions. Code of 1975, § 6-2-3
provides that:
 In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his action.
This provision would in effect stay the running of the general statute of limitations for torts (one year) until such time as Amason discovered, or ought to have discovered, the fraud. Of course the burden is upon he who claims the benefit of § 6-2-3
to show that he comes within it. Tarlton v. Tarlton, 262 Ala. 67, 77 So.2d 347 (1955); King Homes, Inc. v. Roberts,46 Ala. App. 257, 240 So.2d 679 (1970); Mann v. Adams Realty Co.,556 F.2d 288 (5th Cir. 1977). In this case it is clear that Amason does not, as the trial court in effect held when it found that the fraud charges were barred by the statute of limitations. The case law amply supports the trial court. InJohnson v. Shenandoah Life Insurance Co., 291 Ala. 389,281 So.2d 636 (1973) the defendant also pleaded the statute of limitations. The plaintiff by replication embraced Tit. 7, § 42, Code of 1940 (presently Code of 1975, § 6-2-3). The defendants' demurrer to that replication was sustained and on appeal upheld because
 the replication failed (1) to aver with precision the facts and circumstances which allegedly were not discovered and to which appellants allegedly were defrauded, (2) to aver how or when these facts were discovered, (3) to aver what prevented these facts from being discovered before the bar of the statute became complete and (4) failed to aver facts acquitting appellants of all knowledge of facts which ought to have put them on inquiry.
Though replications are no longer necessary it is still incumbent upon one whose complaint on its face shows that some or all of its claims are barred by the statute of limitations to show that he falls within the saving graces of § 6-2-3. SeeAssociates Financial Services Co. v. First National Bank,292 Ala. 237, 292 So.2d 112 (1974). In *Page 551 
this case Amason did not do so. All he did was generally allege that the fraud was not discovered until January 15, 1976. This did not provide the specificity required by the above authority. Therefore summary judgment was proper on these claims.
Having disposed of the plaintiff's statute of limitations contentions we are faced only with the claims surrounding the note of January 15, 1976. Those claims are based upon fraud and violations of the "Minicode."
In regard to the former we hold that the lower court was not in error in entering summary judgment against the fraud claims in this action, particularly that claim surrounding the January 15, 1976 note. In Maring-Crawford Motor Co. v. Smith, 285 Ala. 477, 233 So.2d 484 (1970), Justice Harwood wrote that "in actions of fraud and deceit, damages must be shown since injury is an essential element of such type of action." Continuing, Justice Harwood cited Oates v. Glover, 228 Ala. 656,154 So. 786 (1934) which held that there was no cause of action for fraud when one did not suffer actual damages. When on summary judgment the moving party shows absence of a genuine issue of fact as to a claim, the party opposing summary judgment cannot hold back his evidence but must produce at least a scintilla of evidence that would create a triable issue of fact. 6 Moore's Federal Practice [hereinafter Moore's] par. 56.17[27] — Fraud (1976); Woodham v. Nationwide Life Ins. Co., Ala.,349 So.2d 1110 (1977).
In this case the complaint of Amason as amended and the affidavits and exhibits introduced by the plaintiff on the motion for summary judgment show affirmatively that there is not a scintilla of evidence which would support a finding by a jury of injury to the plaintiff on this issue. In effect Amason avers that on or about January 15, 1976 he paid $5,000 to the Bank because defendant George T. DeVore had misrepresented to him that he owed only $5,000 to the Bank, knowing that statement to be false. Amason continued that he "believed the statement, but was coerced by Defendant George T. DeVore to execute the note [of January 15, 1976] in further payment ofsaid indebtedness." (emphasis added) This allegation does not show that Amason was injured or damaged by the alleged fraud because his only action was to consciously make arrangements to satisfy a debt he had already incurred, and which was uncontrovertedly delinquent when he did so. To merely aver performance of what one is under a pre-existing duty to perform does not satisfy the legal requirement that one show he was injured by the misrepresentations upon which he relied. It being apparent that no injury or damage to the plaintiff resulting from the alleged fraud was shown the issue was ripe for summary judgment and the trial court acted properly in granting it. See 6 Moore's, supra, n. 16.
Those contentions of Minicode violations surrounding the January 15, 1976 note are varied.
Amason first argues that the trial court reversibly erred in its ruling that the January 15, 1976 note complied with the law in regard to its attorney's fee, and prepayment provisions. See
§§ 5-19-10, 5-19-4 (c). This contention is bottomed upon the ground that the January 15, 1976 note did not include language which the State Banking Department regulations require pursuant to Code of 1975, § 5-19-21. We find that while there may be administrative remedies available in such a situation the statute does not give an individual an action for damages based upon the mere form of the note's language. In short, then, if there was error here it was without injury to the appellant and such will not support a reversal. Rule 45, ARAP.
The next source of contention over violation of the Minicode stems from the finding by the trial court that there was an excessive finance charge. The remedy for an excessive finance charge is provided in Code of 1975, § 5-19-19:
 Any creditor charging a finance charge in excess of the amount authorized herein, except as the result of an accidental *Page 552 
and bona fide error in computation, shall forfeit his right to any finance charge, and shall refund to the debtor the total amount of the finance charge, which may be done by reducing the amount of the debtor's principal obligation. If the debtor is entitled to a refund and the creditor refused to refund within a reasonable time after written demand, the debtor may recover a penalty of either twice the finance charge or 10 times the amount of the excess charge, whichever is greater, but in any event not less than $100.00, together with a reasonable attorney's fee. If the creditor has made an excess finance charge in deliberate violation of or in reckless disregard for this chapter, the creditor shall have no right to receive or retain the principal or any finance charge whatsoever and the transaction shall be void. . . .
The Bank does not appeal from the entry of judgment against it on this issue. Therefore we need not discuss whether the trial court correctly interpreted the Minicode provisions on the subject of finance charge when it found a violation. See Code
of 1975, §§ 5-19-1 (1), 5-19-3. Amason however contends the trial court having found the finance charge to be in violation of the statute erred in finding that only the $100.00 figure applied. This finding he argues depended upon the "state of mind" behind such a violation. The trial court was apparently aware of this fact when it ruled that there was no genuine issue of material fact relative to whether the violation was deliberate or in reckless disregard. of the statute. We hold however that such an issue does exist.
On motion for summary judgment the burden is upon the movant to show that no genuine triable issue of material fact exists.Board of Sewer and Water Commissioners of the City of Mobile v.Alabama Power Co., Ala., 363 So.2d 304 (1978). In the instant case this maxim's applicability is complicated because both parties moved for summary judgment on the issue of deliberateness or recklessness. However, we hold that where such cross-motions for summary judgment occur the burden remains on each movant to establish the propriety of the court entering summary judgment on its own motion. See 10 Wright 
Miller, Federal Practice and Procedure: Civil § 2727 (1973). The fact that the first party fails to carry the burden on his motion does not necessarily mean that the other party has carried the burden under his own motion and should be granted summary judgment. See Rains v. Cascade Industries, Inc.,402 F.2d 241 (3rd Cir. 1968); Walling v. Richmond Screw Anchor Co.,154 F.2d 780 (2d Cir. 1946); cert. denied, 328 U.S. 870,66 S.Ct. 1383, 90 L.Ed. 1640 (1946); 10 Wright Miller, supra § 2720 (1973). This instance furnishes an example of a case where neither party has carried its burden on their respective motions and accordingly the issue was not ripe for summary judgment. This follows because we find that the record presents evidence from which the trier of fact might infer that there was a deliberate or reckless violation of the Minicode in the excess finance charge made on the January 15, 1976 note. Such allegations of fact as the overcharges made on other loan transactions between the Bank and Amason, and the hostility between the President of the Bank, George T. DeVore, and Amason are enough under our scintilla rule to create a triable issue on the state of mind surrounding the January 15, 1976 note violations. See Folmar v. Montgomery Fair Co., 293 Ala. 686,309 So.2d 818 (1975) (scintilla rule applicable to summary judgments). This holding is in line with the reluctance of our Court to uphold the grant of summary judgment where motive or intent is material. See e.g., Loveless v. Graddick, 295 Ala. 142, 325 So.2d 137 (1975); See also 10 Wright Miller, supra § 2730; 6 Moore's Federal Practice par. 56.17[41.-1] (2d ed. 1976). Of course this issue is material because, as we have shown, its resolution will determine the measure of recovery by one who has been subjected to an excess finance charge. Code of 1975, § 5-19-19, supra. Accordingly the cause is reversed and remanded for resolution of the disputed issue of fact: whether the excess finance charge was made deliberately or in reckless disregard of the statute. *Page 553 
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.