**ITEL CAPITAL CORPORATION, a corporation, Plaintiff-Appellee, Cross-Appellant,**

v.

**CUPS COAL COMPANY, INCORPORATED, a corporation; and Herman Mulvehill, Defendants-Appellants, Cross-Appellees.**

**No. 81-7703.**

United States Court of Appeals, Eleventh Circuit.

June 23, 1983.

---

Howard & Howard, Charles L. Howard, Jr., Birmingham, Ala., for defendants-appellants, cross-appellees.

Thomas, Taliaferro, Forman, Burr & Murray, John D. Clements, T. Thomas Cottingham, William F. Murray, Jr., Birmingham, Ala., for plaintiff-appellee, cross-appellant.

Before TJOFLAT, HILL and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Defendants Cups Coal Company, Inc., an Alabama mining company, and Cups' president and 97% owner, Herman Mulvehill, appeal from a jury verdict in favor of Itel Capital · Corporation, a California capital equipment leasing company which leased equipment to Cups. Itel's amended complaint, based on diversity jurisdiction, alleged conspiracy and fraud by Cups and Mulvehill and claimed a right to payment under the leases and to possession of the equipment leased. Cups and Mulvehill counterclaimed, alleging, *inter alia,* misrepresentation, conspiracy, and fraud.[1] The trial court ordered a separate trial of the counterclaims and, after a jury trial on Itel's claims, the jury returned a verdict on special interrogatories for $551,000 against both defendants, including $10,000 punitive damages. Based on the answers to the interrogatories, the trial court reduced the judgment against Cups to $538,533.21. The court also denied defendants' motion for a new trial on the condition that Itel consent to a remittitur reducing the verdict against Mulvehill to $497,000, which was the amount that Itel requested against Mulvehill in its complaint plus $10,000 punitive

---

1. Cups' counterclaims alleged fraud and misrepresentation in connection with the leases, and conspiracy by Itel and others to defraud Cups. Mulvehill's counterclaims alleged that Itel caused forged leases and forged certificates of acceptance to be used in interstate commerce.

Mulvehill also counterclaimed for slander, libel, malicious prosecution, and abuse of process. As to these counterclaims, the court entered an order granting Itel's pretrial motion for partial summary judgment, from which Mulvehill does not appeal.

damages. Itel consented to the remittitur without protest. In addition to several alleged errors raised in defendants' appeal, Itel cross appeals from the recalculation of the verdict against Cups and from a refusal to permit Itel to amend its complaint to request more than $497,000 in damages against Mulvehill. We affirm on all issues.

## I.

The relationship between Cups and Itel began in the late spring of 1978 when James Dennis, president of Dennis Mining Supply & Equipment Co.,[2] told Jack Adams, Itel's Birmingham sales representative, that Cups was a potential Itel leasing customer. Dennis arranged for a meeting between Mulvehill and Adams in his office. At the meeting, the parties discussed the possibility that Itel would purchase a Chicago Pneumatic 750 Drill and a Hough 400 Loader from Dennis and lease the equipment to Cups. According to Adams' testimony, Adams requested a financial statement from Mulvehill and Mulvehill promised to put one together and send it to him. Sometime after the meeting, Itel received a financial statement which subsequent investigation proved was fraudulent.[3] Defendants deny having furnished this statement, but Adams testified that, at a meeting between Adams and Mulvehill, Adams said that Cups' financial statement "looked very good," to which Mulvehill replied, "We do all right." In addition to the financial statement, Itel relied on a verification of Cups' coal reserves purportedly prepared by Associated Investment Services. At trial, the individual employed by Associated Investment Services whose name is signed at the bottom of the coal reserves report testified that he had never prepared a report on Cups Coal Company.

At a closing at Dennis' office on June 15, 1978, Mulvehill executed the 750 Drill lease in the presence of Adams, but deferred a decision on the Hough 400 Loader lease. Adams later attempted to locate Mulvehill when he learned that Mulvehill would sign the Loader lease, but, as often happened, Mulvehill could not be contacted except through Dennis. Adams therefore gave Dennis the lease, and Dennis later returned it with Mulvehill's name signed at the bottom. Mulvehill now denies having executed the Hough 400 Loader lease.

In late July 1978, Itel learned that Cups was interested in leasing two PB 83 Compressors which Itel would purchase from Dennis. Again, Adams could not locate Mulvehill, so the lease was left with Dennis and later returned with Mulvehill's name signed at the bottom. Mulvehill also denies signing the Compressor lease.[4]

The fourth and final lease, involving a Chicago Pneumatic 650 Drill, was entered into by Itel and Cups in September 1978. This time, however, Mulvehill suggested that Itel purchase the drill from Henson Truck Sales rather than from Dennis because the Henson drill was cheaper. When Adams and Mulvehill met at Henson Truck Sales, Mulvehill executed the 650 Drill lease in the presence of Adams. Mulvehill does not deny execution of the 650 Drill lease. As with the other three leases, Itel subsequently forwarded payment for purchase of the equipment to the seller. At trial, Itel introduced evidence indicating that over half of the $487,000 paid by Itel to Dennis and to Henson for purchase of the equip-

---

2. In October 1979, Dennis was convicted in federal district court for fraud in connection with the transactions between Itel and Cups. Mulvehill also was indicted, but the trial judge dismissed all charges against him.

3. During discovery, for example, Itel learned that the man who supposedly had prepared the financial statement had died, following a prolonged illness, several months before the date listed on the statement.

4. To support their claim that the signatures on the Compressor lease and the Hough 400 Loader lease were forged, appellants point to the fact that on these two leases Mulvehill's name as typed at the bottom was misspelled as "Mulvahill." The record also shows, however, that on the 750 Drill lease, which Mulvehill admits having signed, his name is misspelled "Mulvahill."

ment was transferred to Mulvehill's bank accounts, at times by circuitous routes.[5]

Cups made payments to Itel on these four leases through much of 1978, but the accounts became past due by early 1979. Despite repeated efforts by Itel to obtain payment from Cups, and promises by Mulvehill to bring the accounts current, Itel finally was forced to terminate the leases and file suit for the amounts past due and for possession of the equipment.[6]

## II.

■ We address first appellants' claims that the trial court erred in instructing the jury as to Itel's theory that Cups and Mulvehill ratified the disputed leases and that they are estopped to deny the validity of the leases. Appellants contend that the evidence was insufficient to support these instructions, but a review of the record reveals more than sufficient evidence to support findings as to both ratification and estoppel. At trial, Itel proved that Cups made payments on all of the leases, including the contested Hough 400 Loader lease and the Compressor lease. Some of the Cups' checks even have each of the four lease numbers listed on them and, at least once, Cups made payments on the four leases with four separate checks. The evidence also suggests that defendants accepted the benefits of the disputed leases along with their burdens. Itel contended at trial that

Cups and Mulvehill signed certificates of acceptance on the leased equipment, acknowledging that it had been delivered, inspected, and found in good working condition. In their brief to this Court, appellants admit that they retained possession of the equipment under the four leases for a period of time, but argue, as they did in the court below, that Itel reclaimed most of it sometime around December 1978. This evidence is amply sufficient for purposes of a jury finding of ratification that defendants benefited, for a limited period of time, from each of the four leases. See *Rush v. Atomic Electric Co.,* 384 So.2d 1067, 1068 (Ala.1980).

■ Itel points to the following evidence in support of a finding of estoppel. The record reflects that, on different occasions, Mulvehill discussed with Itel representatives the condition of the equipment under the disputed leases. Further, Itel's credit manager testified that in December 1978 Mulvehill described to him the location of the Hough 400 Loader and the two Compressors. In addition, Mulvehill discussed his past due accounts with Itel representatives more than once, and each time Mulvehill promised to bring all four accounts current. According to Itel, up until the time that this litigation started, Mulvehill had never denied executing any of the leases. The evidence suggests that he was aware of their existence, that by his statements and

5. Itel presented the following chart at trial detailing the flow of money from Itel to Mulvehill:

| DATE (1978) | ITEL TO DENNIS | DENNIS TO MULVEHILL |
|---|---|---|
| 6/21 | 175,000.00 | |
| 6/21 | | 6,650.00 |
| 6/23 | | 70,500.00 |
| 7/10 | 125,000.00 | |
| 8/10 | 82,000.00 | |
| 8/10 | | 10,548.20 |
| 8/10 | | 10,000.00 |
| 8/11 | | 22,451.80 |
| 12/1 | | 24,400.00 |
| 12/18 | | 10,000.00 |
| 12/27 | | 6,800.00 |

| DATE (1978) | ITEL TO HENSON | HENSON TO MULVEHILL |
|---|---|---|
| 10/3 | 105,000.00 | 105,000.00 |

The check from Itel to Henson was endorsed by Henson directly over to Mulvehill. Throughout the trial, appellants argued to the jury that these financial transactions resulted from bona fide debts from Dennis and Henson to Mulvehill and Cups and therefore were entirely innocent.

6. At a pretrial seizure hearing, Cups contended that it possessed only the 650 Drill and took the position that in December 1978 Itel had reclaimed the Hough 400 Loader, one of the two Compressors, and the 750 Drill. The president of the company that Mulvehill alleged had picked up the equipment on behalf of Itel testified that his company had not picked up the equipment; he even indicated that his company's moving machinery did not possess the capability of moving equipment as large as that which Itel leased to Cups. The district court ordered seizure of all the equipment, but only the 650 Drill was located at the Cups mines.

promises he indicated he considered them to be valid, and that Itel reasonably relied to its detriment. This evidence, considered together with the evidence recited above in support of the finding of ratification, was more than sufficient to support a finding that the defendants are estopped to deny the validity of the leases. *See United States Fidelity and Guaranty Co. v. McKinnon,* 356 So.2d 600, 606 (Ala.1978).[7]

## III.

Appellants also contend that the trial court erred in refusing to instruct the jury as to the statute of limitations for fraud. Itel originally filed its complaint on May 3, 1979, and, following discovery, added Mulvehill as a defendant by amendment dated February 19, 1980. The statute of limitations for fraud in Alabama is one year, Ala.Code § 6–2–39,[8] and appellants argue that the statute had run by the time Mulvehill was added. But under Federal Rule of Civil Procedure 15(c),

> [w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates

back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

■ The allegations in Itel's amended complaint clearly "arose out of the conduct, transaction, or occurrence" set forth in the original complaint. As 97% owner of Cups, Mulvehill was on notice as to the action when it was first filed, and appellants' allegation that they were prejudiced by the six months' delay in adding Mulvehill is without merit. *See Marks v. Prattco, Inc.,* 607 F.2d 1153, 1156 (5th Cir.1979). Moreover, Mulvehill knew or should have known, but for a mistake by Itel, that he would have been named as a defendant when the complaint was filed.[9] Thus, we conclude that the requirements of Rule 15(c) are met and that the date of the filing of the amendment adding Mulvehill relates back to May 3, 1979—well within one year of the time the fraud allegedly occurred.[10]

---

**7.** Appellants rely on *St. Paul Fire & Marine Ins. Co. v. Air Comfort Engineers, Inc.,* 47 Ala.App. 301, 253 So.2d 525, 530–31 (Ala.Ct.Civ.App. 1971), to support the proposition that estoppel cannot form the basis of contractual liability where no primary contractual liability existed. *St. Paul Fire & Marine Ins. Co.* can be distinguished, however, because in that case the plaintiff attempted to use estoppel to impose liability on an insurance carrier based on an insurance contract with a completely unrelated third party. Here, a primary contractual relationship as to the two disputed leases was established by Cups' and Mulvehill's ratification; moreover, this was not a case of attempting to shift contractual liability from an unrelated third party to the plaintiff.

**8.** *See Board of School Comm'rs of Mobile Cty v. Reynolds,* 294 Ala. 21, 310 So.2d 876, 877 (Ala.1975).

**9.** In reaching this conclusion, we read the word "mistake" in Rule 15(c) liberally. *See Taliferro v. Costello,* 467 F.Supp. 33, 36 (E.D.Pa.1979).

**10.** Itel also argues that the statute of limitations was not violated for the independent reason that, under Ala.Code § 6–2–3, a party may file a complaint within one year of the time the fraud was discovered. There was no proof offered that the fraud was discovered, or should have been discovered, more than one year prior to February 19, 1980, but appellants argue that the burden of proof under the "savings" provision of § 6–2–3 was on Itel. *See, e.g., Amason v. First State Bank of Lineville,* 369 So.2d 547, 550 (Ala.1979). Our review of the record suggests that Itel may in fact have proved that it did not actually discover the fraud until after one year prior to the date that Mulvehill was added as a defendant. But in light of our holding that under Fed.R.Civ.P. 15(c) the date of the filing of the amendment related back to the date of the original complaint, we need not decide whether the trial court erred in ruling that the statute of limitations had not run under § 6–2–3, or in placing the burden of proof under § 6–2–3 on appellants.

## IV.

Appellants further assert that the trial court erred by admitting into evidence the Hough 400 Loader lease and related documents, the Compressor lease and related documents, and the fraudulent financial statement alleged to have been given to Itel by Cups.[11] Appellants take the position that these documents were forgeries, arguing that Mulvehill did not sign the two leases and did not know about them, and that Mulvehill and Cups did not send Itel the financial statement. Relying on these contentions, appellants argue that the evidence should have been excluded on grounds of lack of proper authentication and hearsay.

■ With respect to the admission of the leases and related documents, appellants cite *United States v. Estrada,* 441 F.2d 873 (9th Cir.1971), for the proposition that Itel's failure to substantiate the signatures on the two leases renders these documents inadmissible under Rule 901 of the Federal Rules of Evidence. But under Rule 901, proving the signature of a document is not the only way to authenticate it. *See* Fed.R. Evid. 901(b). Moreover, "[t]he requirement of authentication ... as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a); *see also Bury v. Marietta Dodge,* 692 F.2d 1335, 1338 (11th Cir.1982). Itel did not take the position at trial that the signatures on the Hough 400 Loader lease and the 650 Drill lease were in fact Mulvehill's. Rather, it argued only that the leases were prepared and maintained by Itel; that defendants ratified the leases, and that defendants are estopped to deny their authenticity and validity. This case therefore is distinguishable from *Estrada,* in which the parties disputed the validity of the signatures on various money orders allegedly signed by the defendant. The Ninth Circuit held that the money orders were inadmissible because the government had failed to offer *any* direct or circumstantial evidence tending to authenticate the writings. *Estrada, supra,* 441 F.2d at 876–877. Here, however, Jack Adams testified at trial that each document was a true and correct copy of what he had given to Dennis. And in a deposition, Jack Hentschel, former Vice President of Itel, identified each lease and its related documents as the Cups documents that were made and kept by Itel in the ordinary course of business. This evidence, together with the evidence of Cups' and Mulvehill's behavior with regard to the equipment that was delivered to Cups, sufficiently established a foundation for admission. Once the evidence was admitted, appellants were free to, and did, argue to the jury that the documents were forgeries and that Mulvehill did not see or sign them. Weighing the evidence before it, however, the jury chose to believe Itel's argument that, even if Mulvehill did not in fact sign the two disputed leases, appellants ratified them and/or are estopped to deny their authenticity and validity.[12]

■ We also conclude that appellants' hearsay objection is without merit. With regard to the leases, under Federal Rule of Evidence 803(6), documents made and kept in the ordinary course of business are admitted as an exception to the hearsay rule. To be admitted under this exception, the person who actually prepared the documents need not have testified so long as other circumstantial evidence and testimony suggest their trustworthiness. *See United States v. Veytia-Bravo,* 603 F.2d 1187, 1191–92 (5th Cir.1979), *cert. denied,* 444

---

11. Appellants do not contest the introduction of the allegedly fraudulent engineers' survey, although Itel offered proof at trial that it had relied on the survey, along with the Cups financial statement, to approve Cups' credit and lease the equipment.

12. The testimony of Adams and Hentschel also properly laid a foundation for the admission of the financial statement. Moreover, Adams testified that he had requested such a statement from Mulvehill and that Mulvehill had promised to put one together and send it to him. And, as noted above, Mulvehill later responded affirmatively to Adams' remark that the financial statement "looked very good."

**1260**

U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980); *United States v. Flom,* 558 F.2d 1179, 1182 (5th Cir.1977). The evidence recited above, including the fact that the leases and related documents were kept in the ordinary course of business, makes this evidence sufficiently trustworthy to bring it within Rule 803(6).[13] As to the financial statement, appellants' contention that it was hearsay is without merit. It was not introduced to prove the truth of the matters contained in the statement and hence does not fall within the definition of hearsay. Fed.R.Evid. 801(c). Thus, the trial court did not abuse its discretion in admitting the financial statement or the leases and related documents. *See United States v. Hearod,* 499 F.2d 1003, 1004 (5th Cir. 1974).

## V.

■■■ Appellants' remaining contentions require little discussion. First, the trial court's decision to order a separate trial of appellants' remaining counterclaims was not an abuse of discretion. *See Braun v.*

**13.** These facts distinguish this case from *NLRB v. First Termite Control Co.,* 646 F.2d 424 (9th Cir.1981), which appellants cite for the proposition that the person who actually prepared the business records in question must testify in order to lay the foundation for admission under Fed.R.Evid. 803(6). In *First Termite Control Co.,* the Ninth Circuit held that the trial court had improperly admitted a freight bill into evidence when the witness whose testimony was offered to lay the foundation for the bill was not from the company that prepared the bill, but rather was from the company that received it. The witness "had no knowledge [as to how the · billing company's freight] records were made or maintained," *id.* at 427, and "had no interest in the accuracy of [the relevant portion of] the freight bill." *Id.* at 428. Hentschel and Adams, on the other hand, clearly had both knowledge as to the documents' preparation and maintenance, and an interest in their accuracy.

**14.** As indicated earlier, Cups and Mulvehill presented to the jury their fraud and forgery arguments as defenses to Itel's claims. Referring to the jury verdict, the trial court's summary judgment opinion states:

At the trial in chief, the jury specifically found that Cups Coal Company was bound to the terms of the leases; and it specifically found that both defendants conspired with others to defraud plaintiff.

*Berenson,* 432 F.2d 538, 543 (5th Cir.1970). Separate trials are permitted "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy," Fed.R.Civ.P. 42(b), and in this case we cannot fault the trial court's finding that severance was necessary on all three of these grounds. After the jury found in favor of Itel, Itel moved for summary judgment on the remaining counterclaims on the ground that the jury's answers to the special interrogatories specifically had determined all relevant issues of fact. Mulvehill and Cups filed responses to the motion, arguing that the jury's verdict had not decided their counterclaims and that granting summary judgment would deny them their right to a jury trial. After taking the motion under submission, the trial court rejected defendants' arguments and entered summary judgment on all remaining counterclaims in favor of Itel. Appellants suggest no reason for us to disagree with the court's conclusion that the jury verdict had decided all factual issues.[14]

Cups Coal Company counterclaims for recission of the lease for the 650 Drill and damages arising out of an alleged misrepresentation by plaintiff to the effect that Cups Coal Company would be given a right of first refusal to purchase the drill. The jury has found that Cups Coal Company is "bound to the terms of the lease for the 650 Drill." The terms of the lease contain no provision for a right of first refusal. It affirmatively provides that

"4. Net Lease. The Lessee's obligation to pay all rent and all other amounts payable hereunder shall be absolute and unconditional and shall not be subject to any ... defense, counterclaim or recoupment for any reason whatsoever, it being the express intention of the Lessor and the Lessee that all Basic Rent and all other payments payable by the Lessee hereunder shall be, and continue to be, payable in all events unless the obligation to pay the same shall be terminated pursuant to the express provisions of this Lease."

Further, the lease provides that its terms "shall not be ... amended, [or] supplemented ... in any manner whatsoever except by written instrument signed by the Lessor and the Lessee." Moreover, the undisputed evidence at trial established that one of plaintiff's employees delivered an unexecuted right of first refusal form to defendant's attorney, but defendant never

Moreover, where no issue of fact remains, summary judgment decides only questions of law and does not deprive the losing party of its jury trial right. *Harvey v. Great Atlantic and Pacific Tea Co.,* 388 F.2d 123, 124 (5th Cir.1968).

Appellants also argue that the trial court erroneously excluded evidence of a conspiracy by Itel and Adams. The pretrial order, however, contained no conspiracy claim by defendants, and the order is binding on the parties. *Funding Systems Leasing Corp. v. Pugh,* 530 F.2d 91, 95 (5th Cir.1976). Moreover, the evidence as to whether a conspiracy existed instead supported the jury's finding that defendants and Dennis had conspired to defraud Itel.[15] Thus, the court also properly admitted the testimony of Jack Adams as to out of court statements made to him by James Dennis in furtherance of the conspiracy. Even assuming that this testimony normally might be hearsay,[16] it qualifies for admission as a statement by a coconspirator during the course and in furtherance of a conspiracy. Fed.R.Evid. 801(d)(2)(E); *see also United States v. James,* 590 F.2d 575, 581 (5th Cir.) (en banc) (conspiracy must be established by evidence independent of coconspirator statements), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). Finally, appellants waived their objection to alleged inconsistencies in the jury's answers to the special interrogatories by failing to object at the time the verdict was rendered. *Stancill v. McKenzie Tank Lines, Inc.,* 497 F.2d 529, 534–35 (5th Cir.1974). Independently, our review of the record and of the jury's answers reveals no inconsistencies once the trial court's recalculation of the verdict against Cups is considered.

## VI.

Itel raises two points in its cross appeal. First, it cites as error the court's reduction in judgment against Cups, but our review of the jury's answers to the special interrogatories and the evidence presented at trial reveals no ground upon which to fault the trial judge's calculations. Second, Itel appeals from the trial court's refusal to permit amendment of Itel's complaint by increasing its request for damages against Mulvehill so as to conform to the evidence presented at trial. Itel's theory is that, because the court erred in refusing to permit amendment of the complaint, the court was forced to order remittitur as to the judgment against Mulvehill to conform to the amount originally requested—namely, $487,000 (plus $10,000 punitive damages). We need not decide, however, whether the trial court should have permitted amendment to the complaint to conform to the evidence.[17] If we agreed with Itel and held

---

executed the form. (DX 36). Finally, and perhaps most importantly, the uncontradicted evidence (PX 58) establishes that in fact Cups Coal Company was given the opportunity of purchasing the 650 Drill prior to the time that it was sold at public auction.

As to Herman Mulvehill's remaining counterclaims, the jury found that his Company was bound to the terms of the leases which he asserted at trial to be forgeries. Thus, there is no issue of material fact as to these counterclaims.

The Court concludes that there are no genuine issues and, as to each, plaintiff is entitled to judgment as a matter of law.

The trial court therefore clearly concluded that the jury's findings necessarily decided all issues of fact relevant to the remaining counterclaim.

15. The evidence offered by Itel suggested a close working relationship between Dennis and Mulvehill in Cups' dealings with Itel. This evidence, combined with the evidence that the money paid by Itel to Dennis and Henson end-ed up in Mulvehill's account, was sufficient to establish a conspiracy by a preponderance of the evidence. *Cf. United States v. Horton,* 646 F.2d 181, 185 (5th Cir.1981) ("intimate business relationship" and evidence of agreement to divert money to one of alleged coconspirators sufficient to establish admissibility of coconspirator statements), *cert. denied,* 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982).

16. The trial court ruled that the Adams testimony as to Dennis' statements was not offered for the truth of the matter asserted and thus was not hearsay. Appellants agree that, to this extent, the statements were not hearsay, but argue that they were also used to prove the substantive allegations in Itel's complaint.

17. The record reflects, however, that the court charged the jury that Itel sought $487,000 in compensatory damages from Mulvehill, and that Itel raised no objection to the charge.

that the complaint should be amended, we would in effect hold that the court erred in entering the remittitur order. But Itel accepted the remittitur without protest, and the law of this Circuit[18] is that "once a remittitur has been accepted it may not later be appealed unless the acceptance was made under protest." *Minerals & Chemicals Phillipp Corp. v. Milwhite Co.,* 414 F.2d 428, 431 (5th Cir.1969); *see also Movible Offshore Co. v. Ousley,* 346 F.2d 870, 875 (5th Cir.1965). To permit Itel to attack the basis of the remittitur order is nothing more than an attack on the remittitur order itself under a different label.

AFFIRMED.

---

18. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc).