The Farmers Merchants Bank of Waterloo brought this declaratory judgment action to have the circuit court determine the priority of conflicting security interests held by the Bank and Krystal Hill in certain logging equipment. The trial court held that the Bank had a valid and enforceable security interest and that Ms. Hill's security interest was void. Ms. Hill appealed.
In May 1988, Jeffery Sharp and Thurman Agee, doing business as T J Logging, approached Krystal Hill's father, Kenneth Dale Hill, and asked him for a loan to help them with their logging business. Ms. Hill's father declined to get directly involved with the transaction himself, but told them he would give money to his daughter and that she could lend it to them if she wished to do so. On May 18, 1988, Ms. Hill and her father went to her attorney's office, where they met with Sharp and Agee. Mr. Hill endorsed a $25,000 cashier's check payable to him and gave it to his daughter; she gave it to Sharp and Agee, who then executed a promissory note by which they were to repay the loan at 10% interest. Sharp and Agee also executed a security agreement, granting Krystal Hill a security interest in the following collateral: one 1983 John Deere 640 model skidder, one 1979 Prentiss 210P loader, and one CTR bucksaw model 4020-117. The names appearing on both the security agreement and the promissory note were "James Thurman Agee" and "Jeffery Keith Sharp." Agee and Sharp filed a UCC-1 financing statement under their full names with the secretary of state on June 8, 1989, describing the collateral and listing Krystal Hill as the secured party.
On June 12 and June 23, 1992, Sharp and Agee executed promissory notes to the Farmers Merchants Bank of Waterloo, granting the Bank a security interest in the same collateral that secured the promissory *Page 790 
note to Ms. Hill. The two signatures that appeared on the promissory note were "Jeff Sharp" and "Thurmon Agee" as officers of "T J Loggers." The Bank filed UCC-1 financing statements with the secretary of state under these names on June 12 and June 23.
On October 12, 1992, Sharp and Agee issued a check to Ms. Hill as partial payment of her loan to them; however, the check was not honored by their bank. Ms. Hill received no further payment on the loan, and in April 1993 she obtained an order from the Lauderdale Circuit Court by which she repossessed the collateral. When the Bank discovered the repossession, it wrote to the secretary of state, requesting a list of any financing statements under the name "Jeff Sharp," "Thurmon Agee," and "T J Logging." The secretary of state sent a letter and a copy of the financing statements on file under those names; those documents indicated that only the Bank held security interests given under those names. The Bank thereafter brought this declaratory judgment action.
The Bank argued at trial that Ms. Hill was not a secured party because her father had provided her with the $25,000 she lent to Agee and Sharp and because the secretary of state had not found a copy of Ms. Hill's UCC-1 financing statement in its files. The issue before us is whether the evidence supports either of these grounds as a basis for the judgment for the Bank.
A creditor has an enforceable security interest that attaches if (1) "the debtor has signed a security agreement which contains a description of the collateral"; (2) "value has been given" in exchange for the interest; and (3) "[t]he debtor has rights in the collateral." Ala. Code 1975, § 7-9-203(1). It is undisputed that requirements (1) and (3) have been met here; however, the Bank argued at trial that Ms. Hill did not provide value to support a security interest in the collateral, because the $25,000 cashier's check she gave to them had been payable to her father, not to her. The Bank concluded that it was her father, not Ms. Hill herself, who gave "value" and that her security interest never attached.
"Generally, . . . any consideration sufficient to support a simple contract" is sufficient "value" to establish a security interest. § 7-1-201(44)(d). It is established that a contract is not rendered invalid merely by the fact that the underlying consideration is provided by an uninvolved third party.Willingham v. Lankford, 257 Ala. 595, 60 So.2d 387 (1952). The Court held in Willingham:
 " 'The validity of the contract is not affected [by the fact that] the consideration may not have moved from the party to whom the obligations of the contract are extended, and in whom the right of enforcement resides. It is not uncommon, that the consideration for a contract moves from one person, while its promises and obligations are made to another, and the validity of such contracts, when accepted by the party to whom the promise or obligation is made, cannot be questioned.' "
257 Ala. at 598, 60 So.2d at 389 (quoting Wimbish v. MontgomeryMut. Building Loan Ass'n, 69 Ala. 575, 580 (1881).
Under this rule of law, the $25,000 check was sufficient to support a simple contract, and it did support the promissory note that Agee and Sharp executed in Ms. Hill's favor; thus, the check was likewise sufficient to establish Ms. Hill's security interest, under § 7-1-201(44)(d).
We note that the Bank sought to prove at trial that Ms. Hill's father gave her the $25,000 to lend to Sharp and Agee and that her name was put on the promissory note and the security agreement because the father had certain judgments outstanding against him and he did not want his creditors to seize the $25,000. The Bank inferred that the transaction was thus fraudulent and should be declared void. Under Alabama law, however, a conveyance or transfer made to hinder, delay, or defraud creditors is valid and operative between the parties when it has been fully consummated; after it is fully consummated, neither party can rescind it. J.C. Jacobs BankingCo. v. Campbell, 406 So.2d 834 (Ala. 1981). The underlying purpose of the transaction in this case was thus irrelevant; the parties consummated the transaction and Ms. Hill's secured interest is valid.
The Bank argued at trial that even if Krystal Hill's security interest is otherwise *Page 791 
proper, it was not perfected by a properly filed UCC-1 financing statement. Ms. Hill introduced into evidence a copy of her financing statement, properly stamped by the secretary of state and filed on June 8, 1992. The Bank emphasized, however, that the secretary of state did not find a copy of Ms. Hill's financing statement when it searched for other lienholders in response to the Bank's written request in 1993. The Bank thus concluded that Ms. Hill's financing statement was never properly filed.
We find no merit in the Bank's argument on this point. The record shows that Ms. Hill's financing statement would not have been revealed by the secretary of state's search, because it was not filed under any of the names or addresses contained in the Bank's written query. The Bank asked the secretary of state to search under the names "T J Logging," "Jeff Sharp," and "Thurmon Agee"; however, Ms. Hill's financing statement names "Keith Jeffery Sharp" and "James Thurman Agee" as the debtors, and the addresses listed under their names are different from those submitted by the Bank to the secretary of state. The fact that the Bank's narrow query did not lead to the discovery of Ms. Hill's financing statement does not change the fact that she filed her statement before the Bank filed its own statement; thus, Ms. Hill held a perfected security interest that, as between the two, is first in right.
The record shows that Sharp and Agee received value in return for a valid security interest in the collateral, and that Ms. Hill perfected her security interest by filing a UCC-1 financing statement with the secretary of state. The evidence does not support the judgment in favor of the Bank; accordingly, it is reversed and the cause is remanded for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and INGRAM, JJ., concur.