Donald E. Aucoin, Sr., and Vicky H. Aucoin divorced in 1986. Vicky was awarded custody of their minor child; Donald was ordered to pay child support. Because Donald was not consistent in paying his child support, Vicky several times received judgments for child-support arrearages.
In 1991, Carolyn Aucoin, Donald's second wife, purchased approximately three acres of real estate from Kenneth and Ida Sessions. Donald and Carolyn testified that Donald paid no part of the purchase price and that the attorney who drafted the deed was instructed to place only Carolyn's name on the deed as grantee; however, the deed, recorded on January 31, 1991, listed both Donald and Carolyn as grantees. In June 1993, Vicky filed in the probate court a document that we understand from the record to be a "certificate of judgment" relating to a judgment of the circuit court awarding her a certain sum for the child-support arrearages. This certificate was apparently filed pursuant to Ala. Code 1975, §§ 6-9-210 and -211, for the purpose of creating a lien against Donald's interest in the real estate.
On July 12, 1993, the Sessionses executed what they called a "corrective vendor's lien deed," naming only Carolyn as grantee; Donald also executed a quitclaim deed to Carolyn, apparently to be certain that his interest in the property was extinguished. These deeds were filed on or about July 14, 1993. In September, Vicky sought and received a judgment setting aside the corrective vendor's lien deed and the quitclaim deed. A one-half interest in the property — Donald's interest — was sold at a sheriff's sale on April 4, 1994; Vicky was the highest bidder.
Vicky filed an action for partition of the property in December 1994. In June 1996, Donald filed a complaint for modification of child support. Vicky filed what she titled as an "Answer and Cross-Motion," in which she stated that she had purchased Donald's one-half interest in the disputed real estate at the sheriff's sale and that Donald was now claiming that he had no interest in that property by virtue of the corrective vendor's lien deed. Carolyn filed a motion to intervene in the child-support action, arguing that the judgment setting aside the corrective vendor's lien deed and the quitclaim deed was void because she had not been a party to the *Page 826 
earlier action in which that judgment was entered. Vicky requested that the trial court consolidate the domestic relations case with the partition action, and the trial court did so. The court also granted Carolyn's motion to intervene and set aside the prior judgment setting aside the corrective vendor's lien deed and the quitclaim deed.
After a hearing, the trial court again set aside the corrective vendor's lien deed, found that Vicky owned an undivided one-half interest in the real estate, ordered that the property be sold for division of the proceeds, and awarded Vicky a $17,375.21 judgment against Donald. In its judgment, the trial court commented that "the amount of $4,294, representing the property in question that was sold to [Vicky] by Sheriff's deed" had been credited against the child-support arrearage. Donald and Carolyn appeal, arguing that the trial court erred by setting aside the corrective vendor's lien deed, that the trial court's failure to set aside the quitclaim deed prevents the sale of the land for division, and that the trial court mistakenly computed Donald's child-support arrearage because it failed to reduce the arrearage by the amount of Vicky's bid at the sheriff's sale.
As Donald and Carolyn argue, Carolyn, as grantee of both the quitclaim deed and the corrective vendor's lien deed, was a necessary party to the action setting aside the conveyances as fraudulent. Simmons v. Clark Equipment Credit Corp.,554 So.2d at 398, 399 (Ala. 1989). Although the trial court, on Carolyn's motion, properly set aside the original judgment setting aside both deeds, the trial court set aside only the corrective vendor's lien deed in the second judgment.
Donald and Carolyn also argue that the trial court erred by setting aside the corrective vendor's lien deed. Donald and Carolyn point out that a deed that does not truly express the intentions of the parties may be reformed by the court on the basis of mutual mistake. Ala. Code 1975, § 35-4-153; see also Sunshine Bank of Ft. Walton Beach v. Smith, 631 So.2d 965, 968 (Ala. 1994). However, the rights of a good-faith purchaser for value must not be adversely affected by the reformation. § 35-4-153. Donald and Carolyn argue that Vicky was not a good-faith purchaser for value and, therefore, that the reformation of the original vendor's lien deed was appropriate.
Although the original vendor's lien deed in this case was not reformed by the court, the parties were permitted to correct the deed themselves. See Hyatt v. Ogletree, 31 Ala. App. 8, 11,12 So.2d 397, 399 (1942); see also Smith, 631 So.2d at 968 n. 1. Because the parties to the deed — the Sessionses, Donald, and Carolyn — agreed to reform the original vendor's lien deed privately, there is no evidence that the parties did not make a mutual mistake in placing Donald's name on the original deed. At the time of the reformation, Vicky was only a judgment creditor; she was not a good-faith purchaser for value. Smith, 631 So.2d at 968. Therefore, the reformation was appropriate.
However, Vicky argues that the trial court could set aside the corrective deed on the basis that it was a fraudulent conveyance, under Ala. Code 1975, § 8-9A-4. That statute reads, in part:
 "(a) A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor.
 "(b) In determining actual intent under subsection (a), consideration may be given, among other factors, to whether:
"(1) The transfer was to an insider;
 "(2) The debtor retained possession or control of the property transferred after the transfer;
"(3) The transfer was disclosed or concealed;
 "(4) Before the transfer was made the debtor had been sued or threatened with suit;
 "(5) The transfer was of substantially all the debtor's assets;
"(6) The debtor absconded;
"(7) The debtor removed or concealed assets;
 "(8) The value of the consideration received by the debtor was reasonably *Page 827 
equivalent to the value of the asset transferred;
 "(9) The debtor was insolvent or became insolvent shortly after the transfer was made;
 "(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
 "(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." § 8-9A-4.
Although the fraudulent conveyance statute is given a liberal construction, see Jesse P. Evans, Alabama Property Rights and Remedies, § 31.1, 470 (1994), and "[t]he manner or form of the transfer or conveyance is generally immaterial so long as the debtor, through a fraudulent device, puts his or her property beyond the ordinary reach of the creditor," id. at § 31.2, 473, every conveyance that frustrates a creditor is not a fraudulent conveyance under the statute. Vicky presented no evidence indicating that Donald had an actual intent to defraud her when he and Carolyn had the original vendor's lien deed reformed. The testimony before the trial court indicated that Donald and Carolyn had never intended that Donald take any interest in the property and that they both intended that only Carolyn's name, as the sole purchaser of the property, would appear on the deed.
Another way Vicky could have proven that the transfer was fraudulent would have been through the doctrine of constructive fraud. "Constructive fraud" is found "when a grantor, indebted at the time, conveys property without receiving valuable consideration." Champion v. Locklear, 523 So.2d 336, 338 (Ala. 1988). Once constructive fraud was alleged, Carolyn, as the grantee, was required to prove the bona fide character of the transfer. Champion, 523 So.2d at 338. To do so, Carolyn could show that the consideration for the transfer was sufficient, but she could also "present evidence tending to show that the original interest owned by the husband was a mere convenience and that [she] initially purchased the property with funds from her own separate estate." Id. Carolyn and Donald both testified that the property was purchased with the proceeds of Carolyn's divorce settlement from an earlier marriage. Vicky presented no evidence to rebut that testimony.
In a case such as this one, where the trial court considers ore tenus testimony, we are mindful of the presumption of correctness that attaches to the trial court's findings of fact. Id. However, although Vicky argued that Donald had an actual intent to defraud her, she presented no evidence to call into dispute the testimony of both Donald and Carolyn as to their original intent to have only Carolyn named in the vendor's lien deed. Therefore, the evidence concerning the intent of Donald and Carolyn was not disputed and the ore tenus presumption has no applicability. Id. The reformation of the original vendor's lien deed was appropriate, so the reformation was allowed as against not only the original parties to the deed, "but also against those claiming under them in privity," including judgment creditors like Vicky. Beasley v. Mellon Fin. Servs. Corp., 569 So.2d 389, 394
(Ala. 1990).
Donald also argues that he should have been given credit against his arrearage in the amount of Vicky's bid on the property at the sheriff's sale. In light of the fact that we are reversing the trial court's judgment setting aside the corrective vendor's lien deed, and thus holding that Donald never had an interest in the property for Vicky to purchase, the trial court is instructed on remand to recalculate Donald's arrearage, giving him no credit for Vicky's attempt to purchase the property at the sheriff's sale. As for Donald's argument that the trial court miscalculated the arrearage, in addition to failing to credit the appropriate amount, we express no opinion and instead instruct the trial court to recalculate the arrearage.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Robertson, P.J., and Yates, Monroe, and Thompson, JJ., concur. *Page 828