Charles B. Roberson appeals from a summary judgment entered in favor of Fred K. Johnson ("Fred") on the issue of whether Gene Thomas Johnson and Vicki Jean Johnson (collectively, "the Johnsons") fraudulently transferred $10,000 to Fred. We reverse and remand.
Sometime in late summer 2001, Roberson loaned the Johnsons $60,000, and the Johnsons issued him a promissory note in return. At an undisclosed time between September 2001 and November 2002, the Johnsons allegedly transferred $10,000 to Fred. In November 2002, the Johnsons jointly filed a petition for bankruptcy in the United States District Court for the Northern District of Alabama ("the bankruptcy court"). The Johnsons listed the $60,000 debt they owed to Roberson in a schedule of debts that they filed with their petition for bankruptcy.
On March 17, 2003, Roberson filed against the Johnsons an adversary proceeding in the bankruptcy court in which he asserted that the transfer of the $10,000 from the Johnsons to Fred was fraudulent because, he alleged, the Johnsons made it within one year of their filing for bankruptcy in violation11 U.S.C. § 727(a)(2).[1] Roberson also asserted that the adversary proceeding contesting the transfer was a "core proceeding" and, therefore, subject to the exclusive jurisdiction of the bankruptcy court. See28 U.S.C. § 157(b)(1) and (2)(h) (noting that bankruptcy courts have jurisdiction over "core proceedings" and that "core proceedings" include "proceedings to determine, avoid, or recover fraudulent conveyances"). On July 22, 2003, the bankruptcy court dismissed Roberson's adversary proceeding with prejudice due to his failure to comply with a pretrial order. The bankruptcy court subsequently discharged the Johnsons' debts, including the $60,000 debt owed to Roberson.
On November 10, 2003, Roberson filed a complaint against Fred in the trial court alleging that in 2001 Roberson had loaned $60,000 to the Johnsons and that they had issued Roberson a promissory note in return. The complaint also asserted that the Johnsons had fraudulently transferred $10,000 to Fred and had subsequently filed for bankruptcy. Roberson further alleged that during the bankruptcy proceeding the *Page 319 
Johnsons' debt to Roberson had been discharged and that the Johnsons were not a party to the current action.
On January 13, 2004, Fred filed a motion to dismiss Roberson's claims pursuant to Rule 12(b), Ala. R. Civ. P. In that motion, he asserted, among other things, that the trial court lacked subject-matter jurisdiction over the dispute. See Rule 12(b)(1), Ala. R. Civ. P. On February 13, 2004, the trial court denied Fred's motion to dismiss. Fred answered the complaint on February 18, 2004, by entering a general denial.
On June 21, 2005, Fred filed a motion for a summary judgment pursuant to Rule 56, Ala. R. Civ. App. The only issue Fred raised in his motion for a summary judgment was that the trial court lacked subject-matter jurisdiction because, he alleged, the doctrine of "judicial estoppel" barred Roberson's claims. Although Fred asserted that he was relying on the doctrine of "judicial estoppel," it is apparent from the record that he was actually relying on the doctrine of "collateral estoppel."[2] Fred accompanied his motion for a summary judgment with a narrative summary of undisputed facts. In his narrative summary, Fred reasserted that the Johnsons' debts, including the debt that they owed to Roberson, had been discharged by the bankruptcy court, that the bankruptcy court had exclusive jurisdiction over the matter, and that the bankruptcy court had fully disposed of the matter. Fred specifically asserted that the bankruptcy court's discharge of the Johnsons' debt estopped Roberson from bringing an action in state court regarding the alleged fraudulent transfer. Fred also attached three documents from the bankruptcy proceeding to his motion for a summary judgment; all of those documents related to the bankruptcy court's discharge of the Johnsons' debts and the bankruptcy court's dismissal of Roberson's adversary proceeding with prejudice.
On September 6, 2005, Roberson filed a motion to strike the three attachments to Fred's summary judgment motion; the trial court granted that motion on September 9, 2005. In its order granting Roberson's motion to strike, the trial court noted that "the [motion] for summary judgment is based on the assumption that there was a fraudulent transfer . . . [and] [t]hat assumption will remain during the pendency [of the matter]."
On January 5, 2006, Roberson filed a document styled "plaintiffs second response to defendant's motion for summary judgment." In that filing, Roberson asserted that his action against Fred had been brought pursuant to § 8-9A-1 et seq., Ala. Code 1975, the Alabama Fraudulent Transfer Act ("the AUFTA"). Roberson acknowledged that his adversary proceeding against the Johnsons had been dismissed with prejudice by the bankruptcy court, but, he asserted, he was not estopped from pursuing the present action under the AUFTA against Fred, the transferee. Fred filed a "letter brief in response to Roberson's January 5, 2006, filing. On January 18, 2006, the trial court entered a summary judgment in Fred's favor; the trial court did not provide its *Page 320 
reasoning for entering the summary judgment. Roberson timely appealed to our supreme court, which transferred the case to this court pursuant to § 12-2-7(6), Ala. Code 1975.
 "Collateral estoppel is an affirmative defense. The standard for reviewing a defendant's motion for a summary judgment based on an affirmative defense is well-established:
 `"Where, as in this case, the defendant moves for a summary judgment based on an affirmative defense, this Court applies the following standard of review:
 "`"When there is no genuine issue of material fact as to any element of an affirmative defense, . . . and it is shown that the defendant is entitled to a judgment as a matter of law, summary judgment is proper. If there is a genuine issue of material fact as to any element of the affirmative defense, summary judgment is inappropriate. Rule 56(c), Ala. R. Civ. P. In determining whether there is a genuine issue of material fact as to each element of an affirmative defense, this Court must review the record in a light most favorable to the plaintiff (the nonmoving party) and must resolve all reasonable doubts against the defendant (the movant)."'"
North Montgomery Materials, L.L.C. v. Federal Ins.Co., 843 So.2d 201, 204 (Ala.Civ.App. 2002) (quotingWal-Mart Stores, Inc. v. Smitherman, 743 So.2d 442,444-45 (Ala. 1999), quoting in turn Bechtel v. Crown Cent.Petroleum Corp., 495 So.2d 1052, 1053 (Ala. 1986)).
As a preface to our analysis, we note that the AUFTA defines a "creditor" as a "person who has a claim"; a "debtor" as a "person who is liable on a claim"; and "transfer" as "[e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." §8-9A-1(4),(6), and (13), Ala. Code 1975. The AUFTA provides that "[a] transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor." §8-9A-4(a), Ala. Code 1975.
The AUFTA sets forth multiple remedies for creditors. The AUFTA provides:
 "(a) In an action for relief against a transfer under this chapter, the remedies available to creditors, subject to the limitations in Section 8-9A-8, include:
 "(1) Avoidance of the transfer to the extent necessary to satisfy the creditor's claim;
 "(2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by any applicable provision of any other statute or the Alabama Rules of Civil Procedure;
 "(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,
 "a. An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
 "b. Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
 "c. Any other relief the circumstances may require. *Page 321 
 "(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds."
§ 8-9A-7, Ala. Code 1975.
The AUFTA also provides several defenses to a transferee. Among other things, the AUFTA provides that a creditor may not void a transfer to a transferee who took in good faith and gave "a reasonably equivalent value" for the transfer. §8-9A-8(a), Ala. Code 1975. Also, the AUFTA provides a transferee the right to have a lien placed on the transferred asset or a reduction in a judgment arising out of the transfer. §8-9A-8 (d)(1) and (2), Ala. Code 1975.
In National Union Fire Insurance Co. of Pittsburgh, Pa.v. Grusky, 763 So.2d 1206 (Fla.Dist.Ct.App. 2000), a federal bankruptcy court had discharged a debtor's debt and one of the debtor's creditors sought, in a subsequent state-court action, to have a transfer from the debtor to a third party declared fraudulent. The state trial court entered a summary judgment in the third party's favor and the creditor appealed; the state appellate court reversed the entry of the summary judgment in favor of the transferee. In concluding that the bankruptcy court's discharge of the debt did not affect the creditor's rights to pursue an action against the transferee, the appellate court noted:
 "`[T]he discharge provision of the Bankruptcy Code, 11 U.S.C. § 524, consistent with fundamental bankruptcy policy, provides the debtor with a fresh start free from the burdens of preexisting liabilities. Under § 524, the discharge only (i) extinguishes personal liability of the debtor; and (ii) prevents creditors whose claims arose pre-bankruptcy from any actions to impose personal liability on the debtor. 11 U.S.C. § 524 (1978). Section 524(e) expressly provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." § 524(e).
 "`Under § 16 of the Bankruptcy Act of 1898, Ch. 541, 30 Stat. 544, 550 (1898), the limitation of discharge provision restricted actions to those against co-debtors, guarantors, or other sureties. The language of § 524(e) of the 1978 Bankruptcy Code reveals a congressional intent to broaden the rights of creditors, by preserving their actions against third parties and their property, and to restrict the effect of a discharge solely to a release of the personal liability of the debtor.'"
National Union Fire Ins. Co. of Pittsburgh, Pa. v.Grusky, 763 So.2d at 1208-09 (quoting Dixon v.Bennett, 72 Md.App. 620, 637, 531 A.2d 1318, 1326 (1987));see also Kathy B. Enters., Inc. v. United States, 779 F.2d 1413 (9th Cir.1986); Dwyer v. Meramec Venture Assocs.,L.L.C., 75 S.W.3d 291 (Mo.Ct.App. 2002); Real EstateDev. Corp. of Florida v. Dawn Dev., Inc., 677 So.2d 366
(Fla.Dist.Ct.App. 1996); and Casey Nat'l Bank v. Roan,282 Ill.App.3d 55, 668 N.E.2d 608, 218 Ill.Dec. 124 (1996).
Although the discharge of their debts may have given the Johnsons a "fresh start," the bankruptcy court's discharge of the debt owed to Roberson had no effect on Roberson's rights with regard to the alleged fraudulent transfer to Fred. SeeNational Union Fire Ins. Co. of Pittsburgh, Pa. v.Grusky, supra. Accordingly, we reverse the trial court's entry of a summary judgment in favor of Fred and remand the cause for further proceedings consistent with this opinion. *Page 322 
The appellee's motion for an award pursuant to Rule 38, Ala. R.App. P., is denied.
REVERSED AND REMANDED.
BRYAN, J., concurs.
PITTMAN, J., concurs specially, with writing, which CRAWLEY, P.J., joins.
MURDOCK, J., concurs in the result, with writing.
[1] 11 U.S.C. § 727(a)(2)(A) provides that a debtor will be granted a discharge in bankruptcy unless the debtor, among other things, makes a transfer with the intent to "hinder, delay, or defraud a creditor" within one year of filing for bankruptcy.
[2] "`[T]he doctrine of judicial estoppel "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted."'" Carver v.Foster, 928 So.2d 1017, 1027 (Ala. 2005) (citations and quotations omitted.) Based on the arguments that Fred advanced to the trial court and to this court, we have little doubt that Fred was actually arguing that Roberson's action was barred by the doctrine of "collateral estoppel," which is an affirmative defense barring a party from relitigating an issue determined against that party in an earlier action See,e.g., Ex parte Flexible Prods. Co. 915 So.2d 34, 45
(Ala. 2005).