THOMAS, Judge.
In March 2010, International Management Group, Inc. ("IMG"), through its owner and president, Michael Carter,[1] executed six promissory notes to Bryant Bank ("the Bank"); Carter personally guaranteed the notes. At that time, IMG was the mortgagee of a mortgage executed by James L. Banks and Martha R. Rembert ("the mortgage"). In July 2010, Carter organized Liberty Assets, LLC ("Liberty"). In August 2010, IMG assigned the mortgage to Liberty; no consideration for the assignment was exchanged between IMG and Liberty.
In February 2011, Liberty assigned the mortgage to Clarence Carter and Phyllis Carter, Carter's parents. In March 2011, the Bank renewed IMG's promissory notes. In December 2011, IMG defaulted *1006 on the promissory notes, and, in January 2012, the Bank sued IMG and Carter; in March 2013 and in February 2014, the Bank received two separate judgments against IMG and Carter totaling $291,673.87.
In October 2015, Carter filed for bankruptcy; he received a bankruptcy discharge in August 2016. IMG was "administratively dissolved" by the State of Georgia on December 31, 2015.[2] In December 2016, Liberty was also "administratively dissolved" by the State of Georgia.
Clarence predeceased Phyllis, leaving her as the sole assignee of the mortgage. Phyllis died in September 2012. Carter was the executor of Phyllis's estate, and, in December 2016, in his capacity as executor of Phyllis's estate, he assigned the mortgage to himself.
In April 2017, the Bank sued IMG, Carter, Liberty, Banks, and Rembert in the Jefferson Circuit Court ("the trial court"), seeking to have the assignment of the mortgage by IMG to Liberty set aside pursuant to the Alabama Uniform Fraudulent Transfer Act ("the AUFTA"), codified at Ala. Code 1975, § 8-9A-1 et seq. In the complaint, as amended, the Bank alleged that IMG had transferred its interest in the mortgage for nominal or no consideration and that the assignment of the mortgage "was made with the intent to hinder, delay, or defraud [the Bank]," in violation of Ala. Code 1975, § 8-9A-4. The Bank sought a preliminary injunction requiring the mortgage payments be paid into the court instead of to Carter and an order subjecting the mortgage to execution as a means of enforcing the Bank's rights as a judgment creditor. IMG and Carter answered the complaint, specifically admitting "that [IMG] transferred the mortgage to Liberty ... without consideration" but denying "that the assignment was made with the intent to defraud [the Bank]." After holding an evidentiary hearing, the trial court granted the requested preliminary injunction on July 6, 2017, and, on September 21, 2017, the trial court entered a default judgment against Banks and Rembert, ordering them to pay the mortgage payments to the circuit clerk. Also on September 21, 2017, the Bank sought and received a voluntary dismissal of its claims against Liberty.
In November 2017, the Bank moved for a summary judgment on its claims against IMG and Carter. The Bank supported its motion with copies of the mortgage; the three mortgage assignments; the articles of organization of Liberty; the certificates of administrative dissolution of both Liberty and IMG; the promissory notes executed by Carter, as president of IMG; copies of the 2013 and 2014 judgments in its favor; and an affidavit of John Platt, the vice president of the Bank. In his affidavit, Platt stated that the Bank had been unaware that, when it renewed IMG's promissory notes in March 2011, IMG was actively transferring its assets to other entities without consideration.
IMG and Carter sought a continuance of the hearing on the motion, pursuant to Rule 56(f), Ala. R. Civ. P., so that they could take Platt's deposition. In addition, IMG and Carter submitted in opposition to the motion for a summary judgment Carter's affidavit, in which he stated that he "did not transfer the mortgage from [IMG] to Liberty ... with actual intent to hinder, *1007 delay, or defraud the [Bank]." The trial court continued the hearing on the summary-judgment motion, and IMG and Carter took Platt's deposition, which they later submitted as a supplemental exhibit in opposition to the Bank's motion.
The trial court held a hearing on the summary-judgment motion on March 22, 2018, after which IMG and Carter submitted a "supplemental opposition" in which they contended that the Bank had, for the first time at the hearing, indicated its reliance on Ala. Code 1975, § 8-9A-5(a), which governs constructive fraudulent transfers, and that, therefore, the trial court should not consider the Bank's argument regarding constructive fraud. In addition, IMG and Carter contended that, insofar as the trial court might accept the Bank's claim grounded on constructive fraud under § 8-9A-5(a), that claim was barred by the applicable four-year statute of limitations set out in Ala. Code 1975, § 8-9A-9(3), because the transfer from IMG to Liberty was made in August 2010 and the Bank did not bring suit until April 2017.
In reply, the Bank argued that the applicability of § 8-9A-5 was not a surprise to IMG and Carter because, although that particular statute had not been cited in the complaint, it had been specifically raised in its reply to IMG and Carter's response in opposition to the motion for a summary judgment.[3] Furthermore, the Bank pointed out that it had alleged in its complaint and amended complaint, and had contended in its motion for a summary judgment,[4] that the transfer of the mortgage from IMG to Liberty had been accomplished without the payment of consideration, a fact that would support the application of § 8-9A-5(a). Finally, the Bank contended that the statute of limitations on its claim alleging constructive fraud under § 8-9A-5(a) had not expired for two reasons. According to the Bank, Ala. Code 1975, § 6-2-3, known as the "savings clause," had prevented the running of the statute of limitations until the date upon which the Bank had discovered the fraudulent transfer of the mortgage, which date, it said, was October 5, 2015. In addition, the Bank contended that, pursuant to 11 U.S.C. § 108(c), the statute of limitations was suspended during the pendency of Carter's bankruptcy case.
On March 28, 2018, the trial court entered a summary judgment in favor of the Bank. The judgment specifically found that "[i]t is undisputed that [IMG] transferred the mortgage to Liberty ... without consideration." Based on this finding, the trial court set aside the transfer of the mortgage from IMG to Liberty and "all subsequent transfers" and concluded that the Bank could execute on the mortgage. See Ala. Code 1975, 8-9A-7(b) (providing that, "[i]f a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds"). IMG and Carter appealed to the Alabama Supreme Court on April 25, 2018, and our supreme court transferred the appeal to *1008 this court, pursuant to Ala. Code 1975, § 12-2-7(6).
On appeal, IMG and Carter argue that the trial court erred in entering a summary judgment in favor of the Bank based on § 8-9A-5(a) because that particular statute was not raised by the Bank until its reply to IMG and Carter's response in opposition to the Bank's summary-judgment motion and because the statute of limitations on a claim alleging constructive fraud under § 8-9A-5(a) had run. IMG and Carter, noting that issues of fraudulent intent are typically inappropriate for resolution via a summary judgment, see Andrews v. RBL, L.L.C. (In re Vista Bella), 511 B.R. 163, 194-95 (Bankr. S.D. Ala. 2014) (" Vista Bella" ); Premier Capital Funding, Inc. v. Earle (In re Earle), 307 B.R. 276, 293 (Bankr. S.D. Ala. 2002) (" Earle"), also argue that genuine issues of material fact precluded the entry of a summary judgment on the Bank's claims under § 8-9A-4. In addition, IMG and Carter contend that the trial court's judgment should be set aside because the Bank failed to name all subsequent transferees, or, specifically, Clarence and Phyllis, as parties to the action.[5] Finally, IMG and Carter argue that the trial court erred in entering a summary judgment in favor of the Bank against Carter because, they contend, the Bank is no longer Carter's creditor because his obligations to the Bank were extinguished by his bankruptcy discharge.
As a preliminary matter, we first address whether the estates of either or both Clarence and Phyllis should have been named as parties in the Bank's action. Relying on Aucoin v. Aucoin, 727 So.2d 824 (Ala. Civ. App. 1998), IMG and Carter contend that all grantees of the mortgage transfers at issue were required to be named as parties to the Bank's action. Indeed, in Aucoin, we explained that the grantee, who was the current owner of the property, was a necessary party to an action seeking to set aside the conveyance as fraudulent. Aucoin, 727 So.2d at 826. However, Aucoin does not hold that all grantees in the chain of title, regardless of their current interest in the property, are necessary parties in an action seeking to set aside a fraudulent transfer. In Aucoin, we relied on Simmons v. Clark Equipment Credit Corp., 554 So.2d 398, 399 (Ala. 1989), as support for our agreement with the grantee in Aucoin that she was a necessary party. A reading of Simmons makes it immediately clear that only those grantees who still hold title to or an interest in the property at issue must be named as *1009 parties in an action seeking to assail a transfer as fraudulent. Simmons, 554 So.2d at 399 ("The grantee, where it still retains title to the property ..., is a necessary party to an action by the grantor's creditors to set aside a conveyance as fraudulent."). Clarence and Phyllis are both deceased, and Carter, acting as executor of Phyllis's estate, transferred the mortgage out of Phyllis's estate to himself, so neither Clarence's nor Phyllis's estate have a current interest in the mortgage, and they were not required to have been named as parties in this action.
Carter also argues that his discharge in bankruptcy prevents the Bank from securing a judgment in its favor against him, personally. Although Carter is correct insofar as he posits that a bankruptcy discharge serves to extinguish the personal liability of a debtor, see 11 U.S.C. § 524(a)(2), he is incorrect that his bankruptcy discharge isolates the transfer of the mortgage from the Bank's reach in this fraudulent-transfer action. See 11 U.S.C. § 524(e). The transfer the Bank attacked as fraudulent in this action was the transfer of the mortgage from IMG to Liberty.[6] Thus, the Bank, acting as IMG's creditor, seeks to reach the transferred mortgage to satisfy its claim against IMG. That is, the Bank's action against Carter is premised not on any personal liability he may owe to the Bank, if any, but on his status as a subsequent transferee of the mortgage.
In Roberson v. Johnson, 950 So.2d 317 (Ala. Civ. App. 2006), we explained that a bankruptcy discharge of Gene Johnson and Vicki Johnson ("the debtors") did not insulate a third-party transferee from a fraudulent-transfer action instituted by the creditor, Roberson. In reaching our holding, this court discussed National Union Fire Insurance Co. of Pittsburgh v. Grusky, 763 So.2d 1206 (Fla. Dist. Ct. App. 2000).
"In ... Grusky, ... a federal bankruptcy court had discharged a debtor's debt and one of the debtor's creditors sought, in a subsequent state-court action, to have a transfer from the debtor to a third party declared fraudulent. The state trial court entered a summary judgment in the third party's favor and the creditor appealed; the state appellate court reversed the entry of the summary judgment in favor of the transferee. In concluding that the bankruptcy court's discharge of the debt did not affect the creditor's rights to pursue an action against the transferee, the appellate court noted:
" ' "[T]he discharge provision of the Bankruptcy Code, 11 U.S.C. § 524, consistent with fundamental bankruptcy policy, provides the debtor with a fresh start free from the burdens of preexisting liabilities. Under § 524, the discharge only (i) extinguishes personal liability of the debtor; and (ii) prevents creditors whose claims arose pre-bankruptcy from any actions to impose personal liability on the debtor. 11 U.S.C. § 524 (1978). Section 524(e) expressly provides that the 'discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.' § 524(e).
" ' "Under § 16 of the Bankruptcy Act of 1898, Ch. 541, 30 Stat. 544, 550 *1010 (1898), the limitation of discharge provision restricted actions to those against co-debtors, guarantors, or other sureties. The language of § 524(e) of the 1978 Bankruptcy Code reveals a congressional intent to broaden the rights of creditors, by preserving their actions against third parties and their property, and to restrict the effect of a discharge solely to a release of the personal liability of the debtor." '
" National Union Fire Ins. Co. of Pittsburgh, Pa. v. Grusky, 763 So.2d at 1208-09 (quoting Dixon v. Bennett, 72 Md. App. 620, 637, 531 A.2d 1318, 1326 (1987) )."
Roberson, 950 So.2d at 321 (emphasis added).
As we explained in Roberson, "[a]lthough the discharge of [the debtors'] debts may have given [them] a 'fresh start,' the bankruptcy court's discharge of the debt owed to Roberson had no effect on Roberson's rights with regard to the alleged fraudulent transfer to [a third party]." Id. Thus, Roberson was permitted to seek to set aside the transfer of certain funds to the third party, despite the fact that the debtors had received a bankruptcy discharge. Id. The same result obtains in the present case.
We turn now to the substantive issues decided by the summary judgment. Before we begin, however, we note that the Bank, as the plaintiff, bore the burden of proof on its claims at trial, and, therefore, we must be mindful that its burden on a motion for a summary judgment is different than the burden placed on a defendant seeking a summary judgment in its favor.
" ' " '[T]he manner in which the [summary-judgment] movant's burden of production is met depends upon which party has the burden of proof ... at trial.' " ' Denmark v. Mercantile Stores Co., 844 So.2d 1189, 1195 (Ala. 2002) (quoting Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala. 1999), quoting in turn Berner v. Caldwell, 543 So.2d 686, 691 (Ala. 1989) (Houston, J., concurring specially) ). If the movant is the plaintiff with the ultimate burden of proof, his ' "proof must be such that he would be entitled to a directed verdict [now referred to as a judgment as a matter of law, see Rule 50, Ala. R. Civ. P.] if this evidence was not controverted at trial." ' Ex parte General Motors, 769 So.2d at 909 (quoting Berner, 543 So.2d at 688 ).
" 'The first prerequisite for [a summary judgment] in favor of a movant who asserts a claim ... is that the claim ... be valid in legal theory, if its validity be challenged. See Driver v. National Sec. Fire & Cas. Co., 658 So.2d 390 (Ala. 1995). The second prerequisite for [a summary judgment] in favor of such a movant, who necessarily bears the burden of proof, American Furniture Galleries v. McWane, Inc., 477 So.2d 369 (Ala. 1985), McKerley v. Etowah-DeKalb-Cherokee Mental Health Board, Inc., 686 So.2d 1194 (Ala. Civ. App. 1996), and Oliver v. Hayes International Corp., 456 So.2d 802 (Ala. Civ. App. 1984), is that each contested element of the claim ... be supported by substantial evidence. See Driver, supra, and McKerley, supra. The third prerequisite for [a summary judgment] in favor of such a movant is that the record be devoid of substantial evidence rebutting the movant's evidence on any essential element of the claim.... See Driver, supra, and First Fin. Ins. Co. v. Tillery, 626 So.2d 1252 (Ala. 1993). Substantial rebutting evidence would create an issue of fact to be tried by the finder of fact and therefore *1011 would preclude [a summary judgment]. See Driver, supra, and First Financial, supra. [Summary judgment] in favor of the party who asserts the claim ... is not appropriate unless all three of these prerequisites coexist. See Driver, supra, and First Financial, supra, McKerley, supra, and Oliver, supra. ' "
Ross v. Rosen-Rager, 67 So.3d 29, 35 (Ala. 2010) (quoting Ex parte Helms, 873 So.2d 1139, 1143 (Ala. 2003) ).
In its motion for a summary judgment, the Bank argued that IMG had
"transferred the mortgage to Liberty ... for no consideration in an effort to put the asset out of reach of its creditors in violation of Code of Alabama § 8-9A-4. As a result, this Honorable Court may set aside a transfer to any subsequent transferee other than a good faith purchaser for value without notice under Code of Alabama § 8-9A-8(b)(1). As the principal of IMG, ... Carter, was involved in each and every transfer of the property, all such transfers were 'with notice' of the original fraudulent transfer. As a result, no subsequent transferee qualifies for status as a bona fide purchaser for value without notice."
In its brief in support of its motion, the Bank further developed its argument, contending that
"[t]he undisputed facts establish that the 2010 transfer of the mortgage constitutes a fraudulent transfer as a matter of law. See Code of Alabama § 8-9A-4(a). In fact, two of the so-called 'badges of fraud' listed in Section 4(b) are not even in dispute in this case: the transfer was to an insider [Liberty, which was an affiliate of IMG] - § 8-9A-4(b)(1) - and the transferee paid no consideration - § 8-9A-4(b)(8)."
Based on the above undisputed facts,[7] the Bank contended, "the original transfer was made with the actual intent to hinder, delay, or defraud [the Bank]."
As noted above, IMG and Carter sought a continuance of the hearing on the motion for a summary judgment, which the trial court granted. However, in their initial response in opposition to the motion for a summary judgment, they denied, in Carter's affidavit, that Carter, as president of IMG, had transferred the mortgage to Liberty with the intent to hinder, delay, or defraud the Bank. In addition, IMG and Carter contended that the issues of intent and whether the transfer of the mortgage was fraudulent were inappropriate for resolution by summary judgment because the issues turned on credibility and the resolution of fact questions by the trial court.
In reply to IMG's and Carter's contention that the fraudulent-transfer issues were too fact-intensive to be appropriate for resolution on a motion for a summary judgment, the Bank argued that Carter's affidavit could not create a genuine issue of material fact in light of his testimony at the hearing on the preliminary injunction,[8] see Lady Corinne Trawlers, Inc. v. Zurich Ins. Co., 507 So.2d 915, 917-18 (Ala. 1987) (indicating that an affidavit that contradicts prior sworn testimony without explanation may be considered a sham affidavit and will not create a genuine issue of material fact), and that, based on that testimony and the admission in IMG and Carter's answer that the August 2010 *1012 transfer was made without consideration, the transfer of the mortgage from IMG to Liberty was fraudulent under § 8-9A-5(a), which states:
"A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer."
In addition, regarding Carter's attempt to paint himself as a subsequent transferee protected by Ala. Code 1975 § 8-9A-8, the Bank asserted that Carter's knowledge of the original fraud and his knowledge and direction of the subsequent transfers prevented him from being considered a bona fide transferee for value. See McClintock v. McEachin, 249 Ala. 591, 592, 32 So.2d 305, 306 (1947) (noting that, in order to attack a subsequent transferee's status as a good-faith transferee, the plaintiff must present evidence of "a participation therein by the [transferee] with knowledge of such intent [to hinder, delay, or defraud the creditor] or with notice of some fact calculated to put him on inquiry which, if followed up, would lead to a discovery of the fraudulent intent").
In their supplemental opposition to the Bank's motion for a summary judgment, IMG and Carter objected vehemently to the Bank's attempt to rely on § 8-9A-5(a) despite having failed to specifically plead that particular statute in its complaint. Furthermore, if the trial court were to allow the Bank to travel under § 8-9A-5(a), IMG and Carter objected to the timeliness of the complaint, noting that the Bank's claim for relief from a fraudulent transfer under § 8-9A-5(a) was required to be brought within four years after the date the transfer was made, or, in this case, by August 2014, nearly three years before the Bank commenced its action. See Ala. Code 1975, § 8-9A-9(3).
In reply to the supplemental opposition, the Bank first asserted that its complaint had been brought pursuant to the AUFTA and that it was not required to have cited each and every subsection of the act upon which it intended to rely; the Bank contended, relying on Almon v. Byrd, 336 So.2d 183, 187 (Ala. 1976), that its allegations that the mortgage transfer from IMG to Liberty was made without consideration and that the transfer had resulted in its inability to receive payment of its judgments were sufficient to plead a fraudulent transfer under § 8-9A-5(a) without reference to the particular statute. Furthermore, in answer to IMG and Carter's assertion of the statute of limitations as a bar to an action under § 8-9A-5(a), the Bank contended that the savings clause of § 6-2-3 applied to its cause of action under the AUFTA. According to the Bank, the testimony of John Platt, its vice president, indicated that the Bank was not aware of the 2010 transfer of the mortgage until October 5, 2015, when Carter filed for bankruptcy. Thus, the Bank concluded, its complaint was timely filed because it was filed within two years of the discovery of the fraud.[9] Even if the trial court was *1013 convinced that its claim under § 8-9A-5(a) had been asserted too late, the Bank argued, it was entitled to a summary judgment under § 8-9A-4 because "the badges of fraud" set out in § 8-9A-4(b) were present in each of the transfers of the mortgage.
The trial court did not specifically indicate whether it had concluded that the Bank's § 8-9A-5(a) claim was timely asserted based on the application of § 6-2-3 or whether it was determining only the § 8-9A-4 claim. The judgment states that "there are no genuine issues of material fact in dispute," determines that, as a matter of undisputed fact, IMG transferred the mortgage to Liberty without consideration, and, therefore, declares that the 2010 transfer was fraudulent and should be set aside. The trial court also indicated in its judgment that all other subsequent transfers of the mortgage were set aside and stated that "[t]he mortgage is subject to execution by [the Bank] in enforcing its rights as a judgment creditor."
Based on the language in the trial court's judgment, IMG and Carter argue that it is likely that the trial court considered only the Bank's § 8-9A-5(a) claim in deciding the summary-judgment motion. Thus, they first argue that the § 8-9A-5(a) claim was not properly and timely asserted by the Bank and also that the claim was barred by the statute of limitations.[10] We cannot agree with IMG and Carter that the Bank's failure to specifically include in its complaint a reference to § 8-9A-5(a), in light of the allegations of the complaint, which clearly support relief under that statute, should bar the Bank from proceeding on that alternate theory of relief. See Phillips Colleges of Alabama, Inc. v. Lester, 622 So.2d 308, 311 (Ala. 1993) (noting that "under modern rules of civil practice the pleadings generally need only to put the defending party on notice of the claims against him"). Furthermore, in light of the parties' ability to fully develop arguments for and against the Bank's right to relief under that statute before the trial court, we can find no prejudice warranting the refusal to allow the Bank to proceed under § 8-9A-5(a). See, generally, Bracy v. Sippial Elec. Co., 379 So.2d 582, 584 (Ala. 1980) (noting, in the context of the liberal allowance of amendments, that "[w]here an amendment merely changes the legal theory of a case or adds an additional theory, but the new or additional theory is based upon the same set of facts and those facts have been brought to the attention of the other party by a previous pleading, no prejudice is worked upon the other party").
More difficult to resolve is the question whether the statute of limitations bars the Bank's complaint under § 8-9A-5(a). Undisputedly, the fraudulent transfer under attack in this action is the August 2010 transfer of the mortgage from IMG to Liberty, which occurred more than six years before the Bank commenced this action in April 2017. The statute of limitations, as set out in § 8-9A-9(3), bars actions to set aside fraudulent transfers under § 8-9A-5(a) after the expiration of four years from the date of the transfer. The Bank contends that the savings clause of § 6-2-3 prevents the operation of the statute of limitations under the particular circumstances of this case.
We first note that, as IMG and Carter generally argue, in order to use § 6-2-3 to stay the running of the statute of limitations, a party must show that it comes *1014 within that statute. Amason v. First State Bank of Lineville, 369 So.2d 547 (Ala. 1979). According to our supreme court in Amason, "generally alleg[ing] that the fraud was not discovered until [a certain date]" is insufficient. Amason, 369 So.2d at 551. Instead, a party seeking to invoke § 6-2-3 must
" '(1) ... aver with precision the facts and circumstances which allegedly were not discovered and to which [plaintiff] allegedly w[as] defrauded, (2) ... aver how or when these facts were discovered, (3) ... aver what prevented these facts from being discovered before the bar of the statute became complete and (4) ... aver facts acquitting [the plaintiff] of all knowledge of facts which ought to have put [it] on inquiry.' "
Amason, 369 So.2d at 550 (quoting Johnson v. Shenandoah Life Insurance Co., 291 Ala. 389, 396, 281 So.2d 636, 642 (1973) ).
The Bank first asserted the savings clause in its reply to the supplemental opposition to its motion for a summary judgment. Taking the statements in the Bank's reply as averments and considering the deposition testimony of Platt as evidence supporting those averments, all that the Bank proved in support of its attempt to come within the savings clause was that it had not discovered the 2010 transfer of the mortgage until October 5, 2015, when Carter filed for bankruptcy. What the Bank did not show was that it lacked " 'knowledge of facts which ought to have put [it] on inquiry.' " Id. As a result, based on the requirements to establish the applicability of § 6-2-3 set out in Amason, the Bank has not presented sufficient evidence demonstrating that each element regarding the question whether it comes within § 6-2-3 is supported by substantial evidence, and, therefore, the issue whether the savings clause operates in the Bank's favor was not properly resolved at the summary-judgment stage.[11] Accordingly, insofar as the trial court's judgment is based on a conclusion that the Bank proved a fraudulent transfer under § 8-9A-5(a), that judgment is reversed. That being determined, we pretermit discussion of whether recordation of the transfers of the mortgage were constructive notice to the Bank of the existence of those transfers, see, generally, Haines v. Tonning, 579 So.2d 1308, 1310 (Ala. 1991) (quoting Christopher v. Shockley, 199 Ala. 681, 682, 75 So. 158, 158 (1917) ) (noting that "the proper recordation of an instrument constitutes 'conclusive notice to all the world of everything that appears from the face' of the instrument"), and whether recordation was sufficient to have prompted the Bank to make inquiry regarding the validity of the transfer. See, e.g., Boyce v. Cassese, 941 So.2d 932, 943 (Ala. 2006) (indicating that the purchasers of property were charged with notice of a recorded agreement relating to that property); but see McCollum v. Burton, 220 Ala. 629, 630-31, 127 So. 224, 225 (1930),[12] and *1015 Desak v. Vanlandingham, 98 So.3d 710, 713 (Fla. Dist. Ct. App. 2012) (determining that "the act of recording a deed does not without more, as a matter of law, state the 'savings clause year' " under Fla. Stat. § 726.110 (2002) ).
We turn now to whether the trial court's summary judgment in favor of the Bank can be affirmed based on § 8-9A-4(a), which requires proof that a debtor intended to "hinder, delay, or defraud" a creditor by transferring an asset. The Bank argues that the evidence it presented established that IMG and Carter intended to hinder, delay, or defraud the Bank. Specifically, the Bank contends that the evidence undisputedly established at least three indicia, or "badges," of fraud set out in Ala. Code 1975, § 8-9A-4(b) :
"(b) In determining actual intent under subsection (a), consideration may be given, among other factors, to whether:
"(1) The transfer was to an insider;
"(2) The debtor retained possession or control of the property transferred after the transfer;
"(3) The transfer was disclosed or concealed;
"(4) Before the transfer was made the debtor had been sued or threatened with suit;
"(5) The transfer was of substantially all the debtor's assets;
"(6) The debtor absconded;
"(7) The debtor removed or concealed assets;
"(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;
"(9) The debtor was insolvent or became insolvent shortly after the transfer was made;
"(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
"(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."
According to the Bank, it presented undisputed evidence of factors (1), (8), and (9) because, it contends, the evidence of record indicates that the transfer was to an insider, that the transfer was not for "reasonably equivalent value," and that the transfer rendered IMG insolvent. However, as mentioned in footnote 7, supra, the Bank failed to establish that IMG's insolvency was an undisputed fact. The Bank asserted before the trial court in various motions and replies that Carter had testified to IMG's insolvency at the hearing on the preliminary injunction. However, no transcript of any testimony from that hearing appears in the record, and, thus, the Bank presented no evidence of this fact to support its motion for a summary judgment. See *1016 Clinkscales v. Chevron U.S.A., Inc., 831 F.2d 1565, 1570 (11th Cir. 1987) ("The testimony produced at the preliminary injunction hearing was not transcribed until after the district court ruled on the summary judgment motion. We conclude that, even though the same district judge presided at both the preliminary injunction and summary judgment stages, appellant was obligated to produce a written transcript of the hearing in order to rely upon this testimony as evidence for consideration on summary judgment."). Therefore, the record supports a conclusion that the Bank presented evidence of only factors (1) and (8).
In any event, as IMG and Carter contend, proof of one or more of the factors set out in § 8-9A-4(b) does not compel a conclusion that a creditor is entitled to a judgment in its favor under the AUFTA. See Vista Bella, 511 B.R. at 194-95 ; Earle, 307 B.R. at 293.
"No specific combination of badges is necessary for a finding of actual intent and the presence of any of the badges of fraud does not compel such a finding. In re Manhattan Inv. Fund Ltd., 397 B.R. 1, 10 n.13 (S.D.N.Y. 2007). The badges merely highlight circumstances that suggest that a transfer was made with fraudulent intent. Id."
Vista Bella, 511 B.R. at 194-95.
In addition, the Earle court explained that
"[t]he fact that [the creditor] may have satisfied some of the objective factors in § 8-9A-4(b) does not mandate a finding of actual intent to defraud. This is in part because 'actual fraudulent intent requires a subjective evaluation of the debtor's motive.' In re Jeffrey Bigelow Design Group, 956 F.2d 479, 484 (4th Cir. 1992). Although consideration of the objective factors has a bearing 'on whether constructive fraudulent intent exists ... it is not conclusive for actual fraudulent intent.' Id."
Earle, 307 B.R. at 293 n.9.
Moreover, "it is clear that actual intent to hinder, delay, or defraud is a heavily fact-dependent question." Vista Bella, 511 B.R. at 195. "Actual fraud ... most often ... is revealed through circumstantial evidence," and "intention is a mental emotion, of which the external signs are the acts and declarations of the parties, taken in connection with the concomitant circumstances." Clear Creek, Inc. v. Royal American Corp. (In re International Resorts, Inc.), 46 B.R. 405, 413 (N.D. Ala. 2984). As the Vista Bella court explained, "[f]raudulent transfer issues ... generally come down to the credibility of witnesses." Vista Bella, 511 B.R. at 193. Thus, determinations regarding actual intent to "hinder, delay, or defraud" are not well suited for summary judgment. See SE Prop. Holdings, LLC v. Braswell, 255 F.Supp.3d 1187, 1202 (S.D. Ala. 2017) (declining to enter a summary for a defendant on a claim under § 8-9A-4(a) based on, in part, "the highly fact-specific nature of the actual intent query").
Although the Bank presented evidence from which a fact-finder could conclude that IMG and Carter possessed the intent to "hinder, delay, or defraud" the Bank, Carter denied in his affidavit that he, as president of IMG, acted with such intent. Therefore, it is up to the fact-finder to weigh the credibility of the witnesses, to balance the facts relating to the several factors, and to decide the true intent behind the transfer. See Earle, 307 B.R. at 291-94 (discussing and weighing the evidence concerning the several factors to determine whether the debtor had the intent to defraud). We cannot agree with the Bank that it met its burden of establishing without dispute that IMG and Carter acted with the requisite intent such that a summary *1017 judgment in the Bank's favor on its claim under § 8-9A-4(a) was appropriate, and, insofar as the summary judgment was premised on that claim, it is reversed.
Based on the foregoing discussion, we reverse the summary judgment in favor of the Bank, and we remand the cause for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Thompson, P.J., and Pittman and Moore, JJ., concur.
Donaldson, J., recuses himself.

On October 1, 2018, attorneys for Carter filed in this court a suggestion of his death. We note that Rule 43(a), Ala. R. App. P., provides that an appeal "shall not abate" upon the suggestion of the death of a party. See Cox v. Dodd, 242 Ala. 37, 39, 4 So.2d 736, 737 (1941) ("It is a further general rule that the death of a party, pending an appeal ..., furnishes no grounds for the abatement of the suit. In such case it is the common practice for the appellate court to affirm or reverse the judgment nunc pro tunc."). Instead, this court is to dispose of the appeal as it may direct. Rule 43(a) ; we will therefore proceed to a decision on the merits of this appeal. See Woodruff v. Gazebo East Apartments, 181 So.3d 1076, 1080 (Ala. Civ. App. 2015).

Although IMG was administratively dissolved, we assume, without deciding, that the Bank's claims against it may have been properly brought pursuant to Ga. Code Ann., § 14-2-1421(c) ; however, because neither party has addressed the issue, we do not so hold. See Watts v. TI, Inc., 561 So.2d 1057, 1059 (Ala. 1990) (indicating that we apply the law of the state of incorporation regarding "the survival of a remedy after ... dissolution").

We note that IMG and Carter objected to the Bank's change in legal theories in its reply to their response in opposition to the Bank's summary-judgment motion, and, therefore, that this case is unlike Langston v. Bessemer Carraway Medical Center, Inc., 439 So.2d 705, 706 (Ala. Civ. App. 1983), in which the failure of the nonmovant to object to a theory asserted for the first time in a summary-judgment motion resulted in a waiver of its objection to that newly advanced theory.

Indeed, although it did not cite to § 8-9A-5(a), the Bank quoted from and relied upon J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834, 844 (Ala. 1981), in which our supreme court relied on the principle of constructive fraud based on inadequate consideration.

To the extent that IMG and Carter contend that the trial court erred by setting aside "all subsequent transfers," i.e., specifically the transfer to Clarence and Phyllis, because they were allegedly good-faith transferees whose rights are "due to be protected," we note that, regardless of the language of the trial court's judgment, the transfers of the mortgage have not actually been set aside, and the mortgage remains Carter's asset.
"Alabama law is consistent with that of those jurisdictions that hold that the effect of setting aside a fraudulent transfer is not to revest title in the debtor. This Court has held that 'a conveyance or transfer made to hinder, delay, or defraud creditors is valid and operative between the parties when it has been fully consummated; after it is fully consummated, neither party can rescind it.' Hill v. Farmers & Merchants Bank of Waterloo, 641 So.2d 788, 790 (Ala. 1994). Thus, in Alabama, a court's setting aside of a fraudulent transfer does not revest title in the debtor. Instead, the transferee continues to own the fraudulently transferred assets; the transfer is void only as to the creditor, and the creditor can execute on those assets directly. § 8-9A-7(b), Ala. Code 1975 ('If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.')."
Ex parte HealthSouth Corp., 974 So.2d 288, 297 (Ala. 2007).

We realize that, in its reply to IMG and Carter's supplemental opposition to the motion for a summary judgment, the Bank indicated that it was attacking the transfer from Phyllis's estate to Carter; however, the remainder of the arguments presented to the trial court and the judgment itself indicate that the Bank intended to, and did, attack the validity of the initial transfer of the mortgage from IMG to Liberty as being fraudulent.

One other significant fact was presented as undisputed by the Bank: that IMG and Carter had been rendered insolvent in 2008 and remained so at the time of the 2010 transfer of the mortgage. As will be explained in the discussion, infra, this fact is not satisfactorily proven to be undisputed.

But see footnote 7, supra, and discussion, infra.

The Bank further asserted that, pursuant to 11 U.S.C. § 108(c), the statute of limitations in non-bankruptcy proceedings are tolled during the pendency of the debtor's bankruptcy action. However, simple math indicates that reliance on that bankruptcy statute is unavailing, because the statute of limitations would have run in August 2014, before Carter filed for bankruptcy, or would not have begun to run until after the discovery of the fraud, which, according to the Bank, was in October 2015, and the Bank timely filed its complaint if, indeed, § 6-2-3 prevented the running of the statute until the Bank's knowledge of the fraud.

We note that constructive fraud under § 8-9A-5(a) requires proof (1) that the transfer was made for less than "reasonably equivalent value" and (2) that the debtor was insolvent at the time of the transfer or became insolvent as a result of that transfer.

We note, however, that, even if the Bank's averments were sufficient under Amason to demonstrate that its claim under § 8-9A-5(a) falls within § 6-2-3, the summary judgment in the Bank's favor on that particular issue would likely be inappropriate. See Papastefan v. B & L Constr. Co., Inc. of Mobile, 356 So.2d 158, 162 (Ala. 1978). "As a general rule, the question of when the plaintiff discovered, or should have discovered, the fraud is reserved for the jury. Green[ v. Wedowee Hosp. ], 584 So.2d [1309,] 1312 [ (Ala. 1991) ] ; Hicks[ v. Globe Life & Accident Ins. Co. ], 584 So.2d [458,] 463 [ (Ala. 1991) ]." Chambless-Killingsworth & Assocs. P.C. v. Osmose Wood Preserving, Inc., 695 So.2d 25, 27 (Ala. Civ. App. 1996).

In McCollum, our supreme court observed that a purchaser is entitled to rely on the legal presumption that a conveyance is valid unless the purchaser is aware of facts that would put him or her on inquiry of the fraudulent nature of that transfer.
"We recognize the well-established rule that notice is imputed to a purchaser of infirmities and incumbrances appearing in his chain of title. Johnson v. Thweatt, 18 Ala. 741 [ (1851) ] ; Burnwell Coal Co. v. Setzer, 203 Ala. 395, 83 So. 139 [ (1919) ]. But manifestly the execution of such conveyance, as above noted, does not injuriously affect the rights of the [purchasers], unless the recitals of the deed disclosing it was not founded on a valuable consideration suffice to put them on inquiry as to whether or not it was fraudulent. Such a disclosure is not sufficient for this purpose. The legal presumption prevailed that the conveyance was valid and not fraudulent, and they had a right to act upon such presumption until some other fact was brought to their mind that it was fraudulent. McKee v. West, 141 Ala. 531, 37 So. 740, 109 Am. St. Rep. 54 [ (1904) ] ; Merchants' Bank v. Parrish, 214 Ala. 96, 106 So. 504 [ (1925) ]."
McCollum, 220 Ala. at 630-31, 127 So. at 225.